**Frank DIELSI, Plaintiff,**

v.

**Peter FALK, Chris Seiter, Vince McEveety, MCA Universal City Studios, ABC Television (KABC), and Does 1 through 100, inclusive, Defendants.**

No. CV95–8079 ABC (BQRx).

United States District Court, C.D. California.

Jan. 23, 1996.

Salomone & Rapp, Richard T. Ferko, Woodland Hills, CA, for plaintiff.

Leopold, Petrich & Smith, Louis P. Petrich, Los Angeles, CA, for defendants.

## ORDER RE:

1.) PLAINTIFF'S MOTION TO REMAND;

2.) DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD, FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION

COLLINS, District Judge.

Plaintiff's motion to remand for lack of subject matter jurisdiction and Defendants' motion to dismiss Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action came on regularly for hearing before this Court on January 22, 1996. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Plaintiff's motion is GRANTED in part. Plaintiff's First, Second, Third, and Fourth Causes of Action are hereby REMANDED to state court. Defendants' motion to dismiss is also GRANTED in part. Plaintiff's Fifth and Sixth Causes of Action are hereby DISMISSED without prejudice.

## I. Procedural Background

The Plaintiff in this case, FRANK DIELSI, was a speech coach for Defendant PETER FALK on the television series "Columbo." As more fully described below, Plaintiff asserts that he wrote a potential script for "Columbo," entitled "Never Trust a Gambler." Plaintiff then submitted the script to Defendant CHRIS SEITER, then the show's producer. The script was never specifically accepted or rejected. However, as further discussed below, Plaintiff alleges that Defendants later used his script as the basis for an episode of "Columbo" entitled "Strange Bedfellows." On October 20, 1995, Plaintiff filed a Complaint against Defendants Falk, Seiter, VINCE McEVEETY, MCA UNIVERSAL CITY STUDIOS ("Universal"), ABC TELEVISION (KABC) ("ABC"), and DOES 1 through 100, inclusive, for breach of contract, breach of confidence, fraud, negligent misrepresentation, conversion, and negligence. Plaintiff prays for compensatory damages in the amount of $1.25 million, exemplary damages, costs, and attorneys' fees.

Defendant Universal received a copy of Plaintiff's Complaint on October 24, 1995. Defendant Chris Seiter was served with a copy of the Complaint on November 19, 1995. On November 24, 1995, Defendants Universal and Seiter attempted to file a Notice of Removal. The clerk initially accepted Universal's removal notice, assigning the case the file number 95–8051. However, upon further review, the clerk ultimately rejected Universal's filing, because the face of the removal notice differed from the face of Plaintiff's Complaint. In drafting its Notice of Removal, Defendants failed to list "MCA Universal City Studios" as a Defendant in the action (even though Universal drafted the removal notice and was listed at the top of the document).

On November 27, 1995, Defendants Universal and Seiter filed an amended Notice of Removal, listing "MCA Universal City Stu-

dios" as a Defendant in the action. On November 28, 1995, Defendant ABC was first served with a copy of Plaintiff's Complaint. Apparently, Defendants Peter Falk and Vince McEveety have never been served with Plaintiff's Complaint. On December 20, 1995, Defendant ABC joined in Defendants Universal's and Seiter's Notice of Removal. On December 20, 1995, Defendants filed a motion to dismiss Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action. On January 8, 1996, Plaintiff filed an Opposition. On January 16, 1996, Defendants filed a Reply. In addition, on December 27, 1995, Plaintiff filed a motion to remand for lack of subject matter jurisdiction. On January 8, 1996, Defendants filed an Opposition. Plaintiff did not file a Reply.

## II. Plaintiff's Allegations

In his Complaint, Plaintiff alleges as follows:

1.) Plaintiff was employed as a speech coach for Defendant Peter Falk on the television series "Columbo." (Compl. ¶ 1)

2.) Before April 1994, Plaintiff was told by Defendant Chris Seiter, the producer for "Columbo," that new scripts were needed for the show. (Compl. ¶ 10).

3.) In April 1994, Plaintiff completed a television script specifically for "Columbo," entitled "Never Trust A Gambler." Plaintiff submitted this script to Seiter. (Compl. ¶ 11).

4.) In May 1994, Seiter told Plaintiff that he wanted to speak with Plaintiff about his script. (Compl. ¶ 12).

5.) In June 1994, Seiter told Plaintiff that he "loved" the script, but that he wanted certain changes. (Compl. ¶ 14).

6.) Plaintiff heard nothing from Seiter until September 1994, when he was hired to work as Falk's speech coach for the "Columbo" episode called "Strange Bedfellows." (Compl. ¶ 15).

7.) After "Strange Bedfellows" was completed, Plaintiff realized that the episode was in fact based on Plaintiff's script "Never Trust A Gambler." (Compl. ¶ 16).

8.) "Strange Bedfellows" was copied from Plaintiff's script. Defendants did not have their idea for "Strange Bedfellows" until Plaintiff had submitted his script to Seiter. (Compl. ¶ 17).

9.) After the release of "Strange Bedfellows," Plaintiff demanded that Defendants compensate him for his work and give him proper credit. (Compl. ¶ 18).

10.) Defendants refused to compensate Plaintiff or give him any credit for his work. (Compl. ¶ 19).

11.) Plaintiff, at the request of Seiter, submitted his script to Defendants with the full expectation that he would be compensated for its use if Defendants decided to use it. Also, Defendants clearly understood that Plaintiff would be given credit for his work if they used his script. Accordingly, an implied contract existed between Plaintiff and Defendants, which Defendants breached. (Compl. ¶ 22).

12.) Defendants accepted the submission of Plaintiff's script in complete confidence, and on the understanding that the idea would not be used without Plaintiff's consent. Defendants breached that confidence. (Compl. ¶ 25).

13.) Defendants made many misrepresentations of fact to Plaintiff. Defendants represented to Plaintiff that they would compensate him for his work, when, in fact, they had no intention of compensating Plaintiff for his script. Defendants represented to Plaintiff that they would not use his script, when, in fact, they did use his script for "Strange Bedfellows." Defendants wilfully concealed from Plaintiff that they were developing and producing a "Columbo" episode based on "Never Trust A Gambler." (Compl. ¶ 29).

14.) At the time the misrepresentations were made, Plaintiff was ignorant of the falsity of the representations, believed they were true, and acted in reasonable reliance on them. (Compl. ¶ 30).

15.) Defendants have been guilty of oppression, fraud and malice, and have acted in conscious disregard for Plaintiff's rights. (Compl. ¶ 32).

16.) Defendants have unlawfully and wrongfully converted for their own use the "Never Trust A Gambler" script in producing

and distributing the "Columbo" episode "Strange Bedfellows." (Compl. ¶ 37).

17.) The appropriation was without Plaintiff's consent and for Defendant's pecuniary gain and profit. (Compl. ¶¶ 38–39).

18.) Defendants breached their duty of care to Plaintiff by failing to acknowledge that "Strange Bedfellows" is based upon "Never Trust A Gambler," and by failing to account for the monies due to Plaintiff from "Strange Bedfellows." This breach has damaged Plaintiff's reputation and hurt his ability to continue developing his career in the entertainment industry. (Compl. ¶ 43).

19.) Plaintiff seeks compensatory damages from all Defendants. In addition, Plaintiff seeks exemplary damages, costs, and attorneys' fees from Defendant Chris Seiter. (Prayer for Relief).

### III. Discussion

As stated above, Plaintiff has filed a motion to remand for lack of subject matter jurisdiction, and Defendants have filed a motion to dismiss Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action. Both motions address the issue of whether Plaintiff's state law claims are preempted by federal copyright law. Because both motions involve interlinking issues of federal jurisdiction, the Court will address both motions together.

### A. Timely Removal

Because Defendants did not successfully file their Notice of Removal until November 27, 1995 (more than 30 days after Defendant Universal received a copy of the Complaint), Plaintiff first asserts that removal was not timely.[1]

▆▆ Under 28 U.S.C. § 1446(b), a notice of removal must be filed "within 30 days after receipt by defendant, through service or otherwise, of a copy of the initial pleading ..." Defendants argue that the 30 day period begins when a Defendant is properly

served with a copy of the Complaint. However, a majority of courts hold that the 30 day period begins when a Defendant *receives* a copy of the Complaint. *See, e.g., Tech–Hills Assoc. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968 (6th Cir.1993) ("We hold that the removal period is commenced when the defendant has in fact received a copy of the initial pleading that sets forth the removable claim."); *Lofstrom v. Dennis*, 829 F.Supp. 1194, 1196 (N.D.Cal.1993) (the "better reasoned position" is that the 30 day period begins on receipt); *Uhles v. F.W. Woolworth Co.*, 715 F.Supp. 297, 298 (C.D.Cal.1989) (following the receipt rule). The Court concludes that the "receipt rule" is the better reasoned position, for it more closely follows the wording of the statute. Section 1446(b) states that removal must be performed "within thirty days after the *receipt* by the defendant, through service or otherwise, of a copy of the initial pleading[.]" (emphasis added). Thus, under § 1446(b), the "receipt" need not be by official "service."

Thus, because Universal received a copy of Plaintiff's Complaint on October 24, 1995, its Notice of Removal was due on November 24, 1995. On November 24, 1995, Defendant attempted to file its Notice of Removal. The clerk initially accepted the removal notice, and assigned a case number. However, upon further review, the clerk ultimately rejected Universal's filing, because the face of the removal notice differed from the face of Plaintiff's Complaint. In drafting its Notice of Removal, Defendants failed to list "MCA Universal City Studios" as a Defendant in the action (even though Universal drafted the removal notice and was listed at the top of the document). According to the clerk, Defendants' Notice of Removal violated Local Rule 3.4.9(d), which states that "[t]he names of the parties shall be placed below the title of the Court and the left of center, and single spaced.... In all documents, after the ini-

---

1. Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)." *See Northern California District Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir.1995). Plaintiff filed his motion for remand on December 27, 1995, 30 days after Defendants' Notice of Removal was actually filed. Therefore, Plaintiff's motion to remand is timely.

tial pleadings, the names of the first-named party only on each side shall appear[.]" [2]

On November 27, 1995, Defendants Universal and Seiter filed an amended Notice of Removal, listing "MCA Universal City Studios" as a Defendant in the action. Plaintiff contends that this amended Notice of Removal was untimely, and that this Court should remand pursuant to 28 U.S.C. § 1446(b). However, Defendants' amended removal notice was untimely only because the clerk refused to file the original notice, which was tendered on November 24, 1995.

■ Under Federal Rule of Civil Procedure 5(e), "[t]he clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices." In this case, the clerk refused to file Defendants' Notice of Removal because of a merely technical violation of Local Rule 3.4.9(d). This Local Rule governs the format of the title page of a document, so therefore it falls within the ambit of Federal Rule 5(e). On its face, Rule 5(e) "mandates that the clerk accept pleadings for filing even when the pleading technically does not conform with form requirements of the Federal Rules of Civil Procedure or local rules." *McClellon v. Lone Star Gas Company,* 66 F.3d 98, 101 (5th Cir.1995); *see also Turner v. City of Newport,* 887 F.Supp. 149, 150 (E.D.Ky.1995) ("a document is deemed filed when it is in the actual or constructive possession of the Clerk"). The rule is evidently meant to divest the power of clerks to deny filings for reasons of purely technical form. As stated by the Advisory Committee on the Rules, "[t]his is not a suitable role for the office of the clerk, and the practice exposes litigants to the hazards of time bars.... The enforcement of these rules and of the local rules is a role for a judicial officer." Rule 5(e), Advisory Committee Notes.

Therefore, Under Federal Rule 5(e), the clerk's office should have accepted Defendants' Notice of Removal, despite the technical violation of Local Rule 3.9.4(d). Rule 5(e)

"usurped the clerk of court's ability to choose to reject or accept" the Notice of Removal. *McClellon,* 66 F.3d at 102. Therefore, under Rule 5(e), Defendants' Notice of Removal should have been considered filed as of November 24, 1995, "until such time that the court ordered the clerk of court to strike the pleading from the record[.]" *Id.* at 102. Because of the extremely technical nature of Defendants' violation of Local Rule 3.9.4(d), the Court declines to order the pleading stricken. Accordingly, Defendants' Notice of Removal shall be deemed filed as of November 24, 1995. Therefore, Defendants' Notice of Removal is timely under 28 U.S.C. § 1446(b).

## B. Copyright Preemption

Plaintiff also asserts that this Court should remand this case for lack of subject matter jurisdiction. On the face of Plaintiff's Complaint, no federal claim is stated. However, Defendants assert that Plaintiff's state law tort claims are completely preempted by federal copyright law, and therefore actually "arise under" federal law. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) ("If a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.").

■ Under 17 U.S.C. § 301(a),

... all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... and come within the subject matter of copyright ... whether created before or after that date, and whether unpublished, are governed exclusively by this title.... [N]o person is entitled to any such right or equivalent right in any work under the common law or statutes of any state.

Accordingly, "[c]opyright preemption is both explicit and broad[.]" *G.S. Rasmussen & Assoc. v. Kalitta Flying Service,* 958 F.2d 896, 904 (9th Cir.1992), *cert. denied,* 508 U.S.

---

**2.** Defendants contend that they did not actually violate Local Rule 3.4.9(d). Arguably, Plaintiff's state court Complaint was the initial pleading.

However, Defendants' Notice of Removal was the initial pleading in federal court.

959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). A state law is preempted by federal copyright law if (1) the work at issue comes within the subject matter of copyright; and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987); *see also Trenton v. Infinity Broadcasting Corp.*, 865 F.Supp. 1416, 1427–28 (C.D.Cal.1994) (stating same standard).

Both parties agree that Plaintiff's First and Second Causes of Action for breach of contract and breach of confidence are not preempted by federal copyright law. However, there is an issue as to Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action for fraud, negligent misrepresentation, conversion, and negligence.

### 1. Plaintiff's Third and Fourth Causes of Action for Fraud and Negligent Misrepresentation

■ Plaintiff asserts that because his fraud and negligent misrepresentation causes of action involve the "extra element" of a misrepresentation, they are not "equivalent" to federal copyright claims. In *Valente–Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990), the Ninth Circuit stated that a fraud cause of action founded on an allegation that the defendant "misrepresented its intent to perform [a] contract" was "qualitatively different" from a copyright claim because of the additional element of misrepresentation. *See also* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B](1)(e) (1995) (because of the additional element of misrepresentation, "there is no preemption of the state law of fraud"); *Goodman v. Lee*, 1994 WL 710738, *4 (E.D.La. Dec. 20, 1994) ("courts have consistently held that fraud claims relating to copyright disputes which require plaintiff to establish the element of misrepresentation are not pre-empted by federal copyright law."). In their concurrently filed motion to dismiss, Defendants attempt to distinguish *Valente–Kritzer*. Defendants argue that Plaintiff's fraud claim really is a disguised copyright infringement claim because Plaintiff alleges that Defen-

dants fraudulently promised not to make unauthorized use or copies of Plaintiff's work. And indeed, "[i]n so far as ... state claims are restatements of ... copyright infringement claims, they are preempted by federal copyright law." *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *see also Wharton v. Columbia Pictures Industries, Inc.*, 907 F.Supp. 144, 145 (D.Md.1995) (fraud and misrepresentation claims preempted; they were " 'equivalent' to the right to prepare derivative works because each concerns the central allegation that Defendants plagiarized [plaintiff's] copyrighted screenplay.").

■ This is a close case, because Plaintiff's misrepresentation causes of action stray dangerously close to restating copyright claims. Plaintiff's fraud and negligent misrepresentation claims center on three main allegations. First, Plaintiff asserts that Defendants "represented to [him] that they were interested in his submission of a television script and that they would compensate [him] for" his work in developing "Never Trust A Gambler," "when, in fact, at the time of making such representations, defendants never intended to compensate plaintiff for such a script." Compl. ¶ 29(a). Second, Plaintiff asserts that Defendants "falsely represented to plaintiff that they would not use plaintiff's script when, in fact, defendants did develop and produce a television show" that was based upon Plaintiff's script. Compl ¶ 29(b). Third, Plaintiff asserts that Defendants "wilfully concealed from plaintiff that they were developing and producing a 'Columbo' episode based upon 'Never Trust A Gambler' so as to deprive plaintiff of his fees and credits[.]"

The gravamen of these allegations is that Defendants fraudulently promised to honor Plaintiff's rights as an author—his purported copyright rights—and then actually violated those rights. Simply alleging that Defendants violated Plaintiff's rights as an author is "equivalent" to a copyright claim under § 301(a). However, Plaintiff adds an additional element—that Defendants fraudulently promised *not* to violate his authorship rights.

As such, the Ninth Circuit's ruling in *Valente–Kritzer* governs this case.[3] Therefore, Plaintiff's fraud and negligent misrepresentation causes of action are not preempted by federal copyright law.

### 2. Plaintiff's Fifth Cause of Action for Conversion

Plaintiff asserts that Defendants have "unlawfully and wrongfully converted for their own use the "Never Trust A Gambler" script in producing and distributing the "Columbo" episode "Strange Bedfellows." Compl. ¶ 37. However, Plaintiff alleges that he gave a copy of his "Never Trust A Gambler" script to Chris Seiter; the tangible manuscript was not taken from Plaintiff. Rather, Plaintiff alleges that Defendants wrongfully copied the ideas expressed in the "Never Trust A Gambler" script and then converted them for their own use.

■ Generally, the copying and distribution of literary intangible property does not state a claim for conversion. *See* Witkin, *Summary of California Law*, Torts, § 613. Rather, "[t]he infringement of property rights in a literary or artistic production is a distinct tort (plagiarism)." *Id.; see also* Nimmer & Nimmer, *Nimmer on Copyright*, § 1.01[B](1)(i) ("The torts of conversion and trespass relate to interference with tangible rather than intangible property[.]"). Thus, Plaintiff's conversion claim seems more properly a claim for plagiarism or misappropriation. Regardless of how it is cast, however, Plaintiff's Fifth Cause of Action is clearly preempted by federal copyright law because it makes the crucial allegation that Defendants have wrongfully used and distributed Plaintiff's work of authorship. Under the second prong of the *Del Madera* test, this allegation is clearly equivalent to a copyright

claim. It does not add any additional element to the essential claim that Plaintiff's ideas were misappropriated by Defendants. Such a claim is "part and parcel" of a copyright claim. *Del Madera*, 820 F.2d at 977; *see also Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986) (Plaintiff "did not allege a state law claim of conversion to recover for the physical deprivation of the notes. Instead he sought to recover for damage flowing from their reproduction and distribution. Such reproduction interferes with an intangible literary or artistic property right equivalent to copyright."); Nimmer & Nimmer, *Nimmer on Copyright*, § 1.01[B](1)(f)[iii] (citing *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980)) (if a claim is "but another label for reproduction," it is "a preempted right 'within the general scope of copyright' "). Therefore, Plaintiff's conversion claim is preempted by federal copyright law.

### 3. Plaintiff's Sixth Cause of Action for Negligence

■ Plaintiff also alleges that Defendants negligently failed to acknowledge that "Strange Bedfellows" is based upon "Never Trust A Gambler," and negligently failed to compensate Plaintiff for his script. But this claim merely recharacterizes a copyright infringement claim as one for negligence. Because the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim. Moreover, recharacterization of the claim as one of "negligence" does not add a legally cognizable additional element because a general claim for copyright infringement is fundamentally one founded on strict liability. *See Religious Technology Center v. Netcom*

---

**3.** The Court notes that the Ninth Circuit's *Valente–Kritzer* holding creates results that may conflict with the federal concerns motivating copyright law. In essence, a plaintiff may always avoid copyright preemption by further alleging the additional element that a defendant fraudulently promised not to violate his or her authorship rights. Under *Valente–Kritzer*, this is true even though the main focus of the action will be on the nature of the author's rights and the extent to which the defendant violated them—the main concerns of federal copyright

law, which under 28 U.S.C. § 1338, is an area of exclusive federal jurisdiction and evident national concern. Additionally, under the California law of promissory fraud, the facts concerning the alleged violation itself will serve as much of the evidence going to the alleged fraud. *See Miller v. National American Life Ins. Co. of California*, 54 Cal.App.3d 331, 339, 126 Cal.Rptr. 731 (1976) (the refusal to follow through on a promise gives rise to a permissible inference of fraud). Regardless, this Court is, of course, bound by the *Valente–Kritzer* holding.

*On–Line Communication Services, Inc.*, 907 F.Supp. 1361, 1370 (N.D.Cal.1995) ("copyright is a strict liability statute"); *Singer v. Citibank N.A.*, 1993 WL 177801, *5 (S.D.N.Y. May 21, 1993) (copyright infringement is a tort that generally does not require scienter). The alteration of the required mental state does not add an "additional element" under *Valente–Kritzer*. Therefore, Plaintiff's negligence claim is preempted by federal copyright law.

## C. Propriety of Removal

The Court rules above that federal copyright law preempts Plaintiff's Fifth And Sixth Causes of Action for conversion and negligence. Furthermore, under governing principles, copyright law "completely" preempts equivalent state claims. *See Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232–33 (4th Cir.1993). Generally, federal preemption acts as a defense to a plaintiff's action, so therefore it "does not appear on the face of a well-pleaded complaint." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Consequently, the preemption "does not authorize removal to federal court." *Id.* However, in certain circumstances, "the preemptive force of [federal law] is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (quoting *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547). Although there is no Ninth Circuit authority on point, a common law claim preempted by federal copyright law is clearly *completely* preempted under these principles. "Congress has clearly indicated that state-law claims which come within the subject matter of copyright law and

which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law ... should be litigated only as federal copyright claims." *Rosciszewski*, 1 F.3d at 232; *see also* 28 U.S.C. § 1338 (federal courts have exclusive jurisdiction over copyright claims). Therefore, preempted copyright claims can be removed to federal court. *See also Patrick v. Francis*, 887 F.Supp. 481, 484–85 (W.D.N.Y.1995) (following *Rosciszewski*).[4]

## D. The Effect of 17 U.S.C. § 411(a) on Plaintiff's Preempted Copyright Claim

Under the principles discussed above, this Court does have removal jurisdiction over Plaintiff's copyright claim under 28 U.S.C. § 1441. However, as Defendants point out in their concurrently filed motion to dismiss, Plaintiff's copyright claim is procedurally defective. Under 17 U.S.C. § 102(a), "[c]opyright protection subsists ... in original works of authorship fixed in any tangible medium of expression[.]" Thus, even though not federally registered, Plaintiff's script, a work of authorship, is protected by the copyright laws. However, under 17 U.S.C. § 411(a), "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with [the copyright laws]." The only exceptions to this rule are for visual artists (*see* 17 U.S.C. § 106A(a)) and for foreigners covered by the Berne Convention.[5] As an American script writer, Plaintiff fits in neither of these exceptions. Furthermore, Plaintiff has not alleged that he has applied to register his copyright. Indeed, in his brief in opposition to Defendants' motion to dismiss, Plaintiff fails to address the impact of § 411(a) at all.

---

4. In their Notice of Removal, Defendants also alleged that Plaintiff's claims were preempted by the Labor Management Relations Act. However, as Plaintiff points out, there is no allegation that he was employed to write a script for "Columbo," and Defendants have not shown exactly how this case would require this Court to interpret any applicable Collective Bargaining Agreement. In their Opposition to Plaintiff's motion to remand, Defendants do not address LMRA preemption at all. Instead, Defendants rely solely on their copyright arguments. The Court therefore presumes that Defendants have dropped their LMRA preemption argument.

5. The Berne Convention allows foreigners who have not registered to sue for copyright infringements occurring after March 1, 1989. Nimmer & Nimmer, *Nimmer on Copyright* § 7.16[B](1)(b).

Plaintiff's failure to plead that he has applied for a copyright registration deprives this court of subject matter jurisdiction over his copyright claim. "Before a court can have jurisdiction to entertain an infringement action, the *prior* registration requirement of 17 U.S.C. § 411(a) must be met[.]" [6] *Cable News Network v. Video Monitoring Services,* 940 F.2d 1471, 1480 (11th Cir.1991), *vacated on other grounds,* 949 F.2d 378 (11th Cir. 1991); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1488 (11th Cir. 1990); *Jefferson Airplane v. Berkeley Systems, Inc.,* 886 F.Supp. 713, 715 (N.D.Cal. 1994) ("Such registration is a jurisdictional prerequisite to a suit for infringement."). Therefore, the Court must dismiss Plaintiff's copyright claim (without prejudice) for lack of subject matter jurisdiction.[7]

■ This case presents an intriguing jurisdictional puzzle which no reported federal copyright case has squarely addressed.[8] Because federal copyright law completely preempts Plaintiff's Fifth and Sixth Causes of Action, this case was properly removed to federal court. However, after exercising its removal jurisdiction, the Court concludes that it must dismiss the claim for lack of subject matter jurisdiction under 17 U.S.C. § 411(a). This appears paradoxical, but it is the only result that makes sense. If the Court simply remanded the copyright claim

to state court for lack of subject matter jurisdiction, this order would be meaningless because under 28 U.S.C. § 1338, federal courts have *exclusive* jurisdiction over copyright claims.[9]

■ Furthermore, a defendant "does not waive jurisdictional challenges by removing the case to federal court." Schwarzer, et al., *Federal Civil Procedure* § 2:1034 (citing *Pennebaker v. Kawasaki Motors Corp.,* 155 F.R.D. 153, 157 (S.D.Miss.1994)). Thus, in analogous contexts, federal courts have granted removal jurisdiction over completely preempted claims, but then *dismissed* (not remanded) on the basis of unrelated quasi-jurisdictional deficiencies. For example, federal courts are often presented with removed state claims that are completely preempted by the Employee Retirement Income Security Act ("ERISA"). In such a case, the federal court will exercise removal jurisdiction. Then, the Court is presented with the question of whether the plaintiff has exhausted his or her administrative remedies. If exhaustion is not futile, a federal court will refrain from exercising jurisdiction on ripeness grounds and *dismiss* the preempted ERISA claim without prejudice.[10] *See, e.g., Franklin H. Williams Ins. Trust v. Travelers Ins. Co.,* 847 F.Supp. 23 (S.D.N.Y.1994), *rev'd. on other grounds,* 50 F.3d 144 (2d Cir.1995) (accepting removal jurisdiction but

---

**6.** Registration to meet the requirements of § 411(a) is not a particularly onerous burden. For the purposes of filing an infringement action, "the effective date of a copyright registration is the day on which an application, deposit, and fee ... have all be received by the Copyright Office." 17 U.S.C. § 410(d). Thus, Plaintiff can satisfy the § 411(a) requirement by merely filing an application for registration with the Copyright Office. Nimmer & Nimmer, *Nimmer on Copyright* § 7.16[B](1) n. 39. Once the Copyright Office *receives* Plaintiff's application, he can bring a claim for copyright infringement. The receipt of Plaintiff's application satisfies § 411(a)'s jurisdictional requirement, whether or not the application is granted or denied, and whether or not the application precedes or follows the alleged infringement. *Id.* Actual *registration* (not just an application) of the copyright is required for Plaintiff to recovery statutory damages and attorney's fees (*see* 17 U.S.C. § 412), but it is not necessary for the imposition of an injunction. Nimmer, § 7.16[C](3).

**7.** Because the procedural defect in Plaintiff's copyright claim is *jurisdictional,* Defendants' mo-

tion to dismiss is more properly cast as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

**8.** At the hearing, Defendants cited the Court to *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) and *Subafilms, Ltd. v. MGM–Pathe Communications,* 24 F.3d 1088, 1091 n. 5 (9th Cir.1994), stating that they were dispositive of this issue. The Court disagrees, finding them not specifically on point.

**9.** In fact, if the Court were to remand to state court for lack of subject matter jurisdiction generally, its ruling concerning copyright preemption itself could arguably be unenforceable as an advisory opinion.

**10.** For the general ERISA exhaustion requirement, see generally *Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust,* 50 F.3d 1478, 1483 (9th Cir.1995).

then dismissing for failure to exhaust); *Harrison v. California Care*, 1994 WL 69469 (N.D.Cal. Feb. 14, 1994) (same result); *Diaz v. Texas Health Enterprises, Inc.*, 822 F.Supp. 1258 (W.D.Tex.1993) (same result); *Spicer v. Louisiana Power & Light Co.*, 1993 WL 133765 (E.D.La. Apr. 21, 1993) (same result).

Thus, while there are no reported cases that address this issue in the precise context of 17 U.S.C. § 411(a), the Court follows the jurisdictional logic expressed by courts confronted by unexhausted ERISA claims. Accordingly, Plaintiff's Fifth and Sixth Causes of Action are completely preempted by federal law, and thus removed to federal court. However, because the preempted copyright claim is jurisdictionally defective under § 411(a), the Court dismisses the copyright claim without prejudice pursuant to Federal Rule 12(b)(1).[11]

### E. Remaining State Law Causes of Action

■■■■■ Because the Court dismisses Plaintiff's federal copyright claim without prejudice, Plaintiff's First, Second, Third, and Fourth Causes of Action for breach of contract, breach of confidence, fraud,[12] and negligent misrepresentation[13] (all of which

are governed by state law) are hereby REMANDED to state court pursuant to 28 U.S.C. § 1367(c)(3) (federal court may decline to exercise supplemental jurisdiction over state claims if original federal claim is dismissed).

### III. Conclusion

For the reasons discussed above, the Court ORDERS as follows:

1.) Plaintiff's Motion to Remand is GRANTED in part. Plaintiff's First, Second, Third, and Fourth Causes of Action are hereby REMANDED to state court;

2.) Defendants' Motion to Dismiss is GRANTED in part. Plaintiff's Fifth and Sixth Causes of Action are hereby DISMISSED without prejudice.

**SO ORDERED.**

---

11. However, as discussed in footnote 6 above, the jurisdictional defect in Plaintiff's copyright claim is easily cured.

12. For Plaintiff's guidance, the Court offers the following advice if he intends to refile his fraud claim together with a copyright claim in federal court. Under Federal Rule of Civil Procedure 9, Plaintiff must plead a fraud claim with "particularity[.]" "[A]llegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). "A pleading 'is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993) (quoting *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir.1977)). The fraud complaint should generally set out the time, place, and content of alleged misrepresentations, who made the statements, why they were false, as well as set forth specific facts to show the defendant's knowledge of material falsity. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir.1994) (en banc).

In short, mere conclusory allegations of fraud, such as those described in Plaintiff's current Complaint, are insufficient under Rule 9.

13. Because Plaintiff's negligent misrepresentation claim was indeed defective, however, the Court also offers this further guidance. Before re-filing any such claim, Plaintiff is directed to three basic principles of California negligent misrepresentation law. First, an action for negligent misrepresentation cannot be founded upon a false promise. *See Tarmann v. State Farm Mutual Automobile Ins. Co.*, 2 Cal.App.4th 153, 156, 2 Cal.Rptr.2d 861 (1991). Second, Plaintiff must plead that Defendants intended to induce him to rely on their negligent misrepresentations. *See Fox v. Pollack*, 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (1986); Cal.Civ.Code § 1710. Third, a negligent misrepresentation cause of action will not lie for an *implied* representation or for negligent concealment of information, absent a duty to reveal that information. *Byrum v. Brand*, 219 Cal.App.3d 926, 942, 268 Cal.Rptr. 609, (1990); *Wilson v. Century 21 Great Western Realty*, 15 Cal.App.4th 298, 306, 18 Cal.Rptr.2d 779 (1993).