Jerome PRITIKIN, Plaintiff,

v.

LIBERATION PUBLICATIONS, INC., and SAAB CARS USA, INC., Defendant.

No. 99 C 3074.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 15, 1999.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Jerome Pritikin is a professional photographer. On June 8, 1977, he photographed Harvey Milk, an openly gay politician who later served on the San Francisco Board of Supervisors and was subsequently assassinated. In the photograph, Milk is speaking through a bullhorn and carrying a sign entitled "Save Our Rights." The photograph was published in *The San Francisco Examiner* for that date. He later released a copy of the photograph to St. Martin's Press in connection with Randy Shilts' book *The Mayor of Castro Street: The Life and Times of Harvey Milk,* published in 1982. On the back of the photograph, Pritikin wrote his name, address, phone number, and the statement, "This photo may be reproduced only with written permission of the photographer © 1977 J.M. Pritikin S.F."

This lawsuit arose when the photograph was published without attribution or permission in *The Advocate,* a national gay and lesbian newsmagazine, in its issue of November 10, 1998. *The Advocate* is published biweekly by Liberation Publications. Immediately adjacent to the copyright photograph are the words, "The Advocate Poll sponsored by SAAB–Harvey Milk believed that sex is an integral part of gay politics, could he succeed today with a similar attitude?" The poll solicits responses to *The Advocate's* website, *www.advocate.com,* which also provides information regarding the poll. On November 12, 1998, Pritikin filed an application for registration of the photograph with the United States Copyright Office.

Pritikin then sued (1) Liberation Publications for (a) copyright infringement under 17 U.S.C. § 101, *et seq.* and (b) common law conversion, and (2) Saab Cars and Liberation Publications for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "Consumer Fraud Act"). He requests that I(1) order that all copies of the photograph in the defendant's possession, including copies of the November 10, 1998 issue of *The Advocate,* be impounded and destroyed, and (2) award actual damages and loss of commercial benefit, attorneys' fees, and costs. The defendants move to dismiss. I dismiss the state law claims but not the copyright claim.

### I.

In deciding a motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6), I must take as true all factual allegations in the plaintiff's pleadings and draw all reasonable inferences in his favor. *Fredrick v. Simmons Airlines, Inc.,* 144 F.3d 500, 502 (7th Cir.1998). I will grant dismissal only if it appears beyond a doubt from the pleadings that the plaintiff is unable to prove any set of facts consistent with the allegations of the pleadings that would entitle him to relief. *Id.* (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

The defendants argue, first, that Pritikin's state law claims in conversion and under the Consumer Fraud Act are preempted by federal copyright law. The relevant language of 17 U.S.C. § 301(a) preempts any "legal or equitable rights [under state law] that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453 (7th Cir.1996). The photograph is fixed in a tangible medium of expression

and a photograph comes within the subject matter of copyright law. *See* 17 U.S.C. § 102(a)(5) ("pictorial [or] graphic" works copyrightable).

The issue here is whether the state law rights Pritikin invokes are equivalent to copyright rights for purposes of preemption under § 301. I conclude that rights under common law conversion are equivalent, but rights under the Consumer Fraud Act are not. However, I dismiss the Consumer Fraud Act claim for lack of subject matter jurisdiction.

■ A right under state law is "equivalent" to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 676 (7th Cir.1986). That section grants the owner of a copyright the exclusive rights to reproduce (whether in original or derivative form), distribute, perform, and display the copyrighted work. "Thus, a right is equivalent to one of the rights comprised by a copyright if it 'is infringed by the mere act of reproduction, performance, distribution or display.'" *Id.* at 677. The Seventh Circuit has not expressly adopted the "extra element" test, on which there is no preemption if a claim under the state law requires proof of an additional element not required to be proved under the copyright laws. *See, e.g., U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama,* 104 F.3d 1453, 1463 (4th Cir.1997); *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir.1990). However, the Seventh Circuit's approach would appear to lead to similar results, since causes of action requiring an extra element would include those where the mere act of reproduction, performance, distribution or display would not by itself infringe the state law right.

■ On this analysis, Pritikin's common law conversion claim is preempted, since in Illinois, conversion is understood as the wrongful deprivation of an identifi-

able object of property to which the plaintiff was entitled. *See In re Thebus,* 108 Ill.2d 255, 91 Ill.Dec. 623, 483 N.E.2d 1258, 1260 (1985). This right was violated, if it was, by the mere unauthorized reproduction of the photograph.[1] Pritikin argues that conversion demands more because copyright does not require a showing that there is a right to ownership. This is, of course, absurd. A copyright is a form of ownership. *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (elements of copyright infringement are: (1) ownership of a valid copyright and (2) copying of constituent original elements).

■ Pritikin might have argued, more plausibly, that intent is an element that differentiates conversion from copyright infringement. Because in copyright law, "intention is immaterial if infringement appears," *Toksvig v. Bruce Pub.,* 181 F.2d 664, 666 (7th Cir.1950) (*citing Buck v. Jewell–La Salle Realty Co.,* 283 U.S. 191, 198, 51 S.Ct. 410, 75 L.Ed. 971 (1931)), but conversion requires intent, *see In re Thebus,* 91 Ill.Dec. 623, 483 N.E.2d at 1260, it might be argued that the two are not "equivalent" for preemption purposes. I am not certain whether this argument would succeed. The intent element for intentional torts is pretty minimal—not "a hostile intent, or a desire to do any harm, but rather an intent to bring about a result which will invade the interests of another in a way that the law will not sanction." *Cowan v. Insurance Company of North America,* 22 Ill.App.3d 883, 318 N.E.2d 315, 323 (1974) (*citing William Prosser, Law of Torts,* § 8, at 31. (4th ed.1971)). And copyright infringement is not strict liability, unlike patent infringement, but requires at least intent to copy, although

not intent to infringe. *See Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1169 (7th Cir.1997) ("The Copyright Act forbids only copying; if independent creation results in an identical work, the creator of that work is free to sell it."). It would be interesting to consider whether intent to copy is enough more than intent to permanently deprive the owner of his property to avoid preemption. But where Pritikin has not raised the point, any such pronouncement would be dictum. And because he did not raise the point, he has waived it. *See International Union of Operating Engineers, Local 150, AFL–CIO v. Rabine,* 161 F.3d 427, 432 (7th Cir., 1998) ("[A]rguments not raised in a brief are waived.").

Moreover, in holding that contract claims are *not* preempted by the copyright laws, the Seventh Circuit has defined rights "equivalent to any of the exclusive rights within the general scope of copyright" as "rights that restrict the options of persons who are strangers to the author.... A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please." *ProCD, Inc.,* 86 F.3d at 1454. The cause of action based on conversion of intellectual property without wrongful physical possession sounds in tort. It establishes a right against the world, and so would be preempted here. *Accord Berge v. Bd. of Trustees of the Univ. of Alabama,* 104 F.3d at 1463 (preemption of conversion claim where plaintiff alleged only unlawful retention of intellectual property rights).

## II.

■ The situation with the Illinois Consumer Fraud Act is quite different. To

---

**1.** Pritikin does not contend defendants unlawfully retained the physical object embodying the plaintiff's work, *i.e.,* the photograph itself, insofar as one can speak of "the" photograph itself. *See* Walter Benjamin, "The Work of Art in the Age of Mechanical Reproduction," in *Illuminations* 217 (Hannah Arendt ed. & Harry Zohn trans. (1955)) (discussing the inherent lack of uniqueness in intrinsically me-

chanically reproducible works). One scholar states that § 301(a) will preempt a conversion claim "where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work." Paul Goldstein, *Copyright, Patent, Trademark and Related State Doctrines* 777 (3d ed.1993).

make a case under this statute, the plaintiff must prove that the defendant (1) engaged in a deceptive act or practice, (2) with the intent that a party (including the consumer) rely on the deception, (3) while engaged in trade or commerce. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 970 (7th Cir.1999) (*citing Zekman v. Direct American Marketers, Inc.,* 182 Ill.2d 359, 231 Ill.Dec. 80, 695 N.E.2d 853, 860 (1998)). The defendants could not violate this law merely by reproduction, performance, distribution or display of the photograph. To violate it, they would have to reproduce the photograph as part of a deceptive act or practice with the intention that someone rely upon the deception. Pritikin argues that the defendants (1) committed a deceptive act by concealing the source of the photograph and placing the poll and the Saab sponsorship adjacent to it to convey the false impression that the defendants had a right to the photograph, and (2) intended that consumers rely on this false impression.

The defendants argue that the Consumer Fraud Act claim is nonetheless preempted because it is based on "attribution of authorship" and "such state law claims are ... preempted." The only relevant case they cite in support of this proposition, however, *Dielsi v. Falk,* 916 F.Supp. 985 (C.D.Cal.1996), actually comes out against preemption. *See id.* at 991.

■ Although the Consumer Fraud Act claim is not preempted, Pritikin lacks standing to bring it in federal court, and so it must be dismissed for lack of subject matter jurisdiction. The defendants do not raise this point, but "it is always proper for a federal court to raise the issue of its own subject matter jurisdiction under Rule 12(b)(1)." *Shockley v. Jones,* 823 F.2d 1068, 1072 (7th Cir.1987). In order to sue in federal court, a plaintiff must meet the constitutional requirements for standing: (1) the party must have personally suffered an actual or threatened injury caused by the defendant's illegal conduct;

(2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one that is likely to be redressed by a favorable decision. *United Transp. Union v. Surface Transp. Board,* 183 F.3d 606, 611 n. 2 (7th Cir.1999).

It is hard to see how the injury Pritikin claims is traceable to the conduct as challenged under Consumer Fraud Act. If the injury is lost monies that would have been due him had authorization to reproduce the photograph been asked and given, how is that loss caused by consumers relying on a false impression that the defendants had a right to reproduce the photograph? Likewise with any reputational injury. If Pritikin were a famous photographer who had produced an identifiable image widely associated with him, like an Ansel Adams wilderness picture,[2] then use of such a photograph might be a deceptive act, operating as a sort of phoney endorsement ("Pritikin wants you to buy Saab and participate in *The Advocate's* poll."). But while Pritikin may be "a professional photographer, nationally recognized for having captured on film some of the most important people and events in recent history," which I must assume to be true for the purposes of the motion, he does not allege that he has the appropriate sort of prominence or that the photograph is associated with him in the public mind. The requisite causal link is therefore lacking. Pritikin accordingly has no standing to bring the Consumer Fraud Act claim.

### III.

Pritikin's remaining claim is the copyright claim. The photograph was created before January 1, 1978, the effective date of the Copyright Act of 1978, *see* 17 U.S.C. § 304, and was governed originally by the 1909 Copyright Act, now largely superceded, but applicable in some respects, including whether the work was then copyrighted, to works created before 1978. The defendants cite section 13 of the 1909 Act,

---

**2.** Or if Pritikin's name had been printed, attributing the photograph to him.

which states that once a copyright has been obtained by publication with notice, "there shall promptly be deposited" the required copies and registration claim with the Copyright Office. They argue that Pritikin's 21–year delay in registering his copyright—actually, the relevant figure would be 16 years, the period since the photograph was published with notice in Randy Shilts' book, *The Mayor of Castro Street*—violated this "prompt registration" requirement, and that the photograph was therefore in the public domain when it was published.

Unfortunately for the defendants, the Supreme Court rejected this sort of claim in *Washingtonian Publishing Co. v. Pearson*, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939), holding that section 13 of the 1909 Act was not to be read as a condition subsequent that, if not satisfied, would destroy the copyright. *Id.* at 40, 59 S.Ct. 397. Under *Washingtonian*, deposit and registration under the 1909 Copyright Act could be made at any time after publication and before the filing of the infringement action. As the Seventh Circuit has said, "[t]hose provisions make clear that registration is not a condition of copyright protection." *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 485 (7th Cir.1982). The defendants suggest that it is "arguable" that *Washingtonian* was repealed by subsequent legislation, citing *Nimmer on Copyright* § 7–16, at 7–152 (referring to a later enacted express exemption under § 9(c)(2) from the deposit requirements). Perhaps it is arguable, but no court of appeals has followed *Nimmer's* hint, and the Seventh Circuit expressly rejected it, holding that *Washingtonian* was and is good law. *See id.* ("[T]he recognition that the deposit and registration requirements under the Act were procedural only and not ... prerequisites for a copyright has been carried forward in the current statute ....").

The defendants also suggest that it might be inferred from failure to promptly register that Pritikin had an "intent to abandon" the copyright. It might, but, as defendants should know, not on a motion to dismiss. Here, every inference in drawn in favor of the plaintiff.

Pritikin's conversion claim is DISMISSED as preempted. His Consumer Fraud Act claim is DISMISSED for lack of subject matter jurisdiction. Defendant's motion to dismiss Pritikin's copyright infringement claim is, however, DENIED.