**Ann Marie BRACO, Plaintiff,**

v.

**MCI WORLDCOM COMMUNICATIONS, INC.; and Does 1–25, Defendants.**

**No. CV01–00496ABC(SHx).**

United States District Court, C.D. California.

April 3, 2001.

---

Michael Linfield, Law Offices of Michael Linfield, Pasadena, CA, for Plaintiff.

Jeffrey A. Rosenfeld, Sean A. Marks, Piper, Marbury, Rudnick & Wolfe, Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT

COLLINS, District Judge.

This case involves Plaintiff's challenge, under California unfair competition law, to Defendant's alleged practice of using misleading advertising to sell pre-paid calling card(s) to California consumers. Defendant removed to this Court, alleging complete preemption of the state law claims. Plaintiff has filed a Motion to Remand; con-

versely, Defendant has filed a Motion to Dismiss. The Court finds both Motions appropriate for submission without oral argument. *See* Fed. R. Civ. Pro. 78; Local Rule 7.11. Accordingly, the noticed hearing date of April 9, 2001 is hereby VACATED. For the reasons indicated below, the Court finds that removal was improper, and GRANTS Plaintiff's Motion to Remand. The Court DENIES Defendant's Motion to Dismiss, as moot. The Court ORDERS Defendant to pay attorneys' fees, totaling $7,500.00.

## I. PROCEDURAL HISTORY

On December 19, 2000, Plaintiff ANN MARIE BRACO ("Plaintiff," or "Braco") filed the operative Complaint in this case in Los Angeles County Superior Court against Defendant MCI WORLDCOM COMMUNICATIONS, INC. ("Defendant," or "MCI").[1] The Complaint asserts two Causes of Action under California statutes: (1) for False Advertising, under Section 17500 (*et seq.*) of the Business and Professions Code; and (2) for Unfair Business Practices, under Section 17200 (*et seq.*) of this same chapter (collectively, the "Unfair Competition Act," or "UCA"). The Complaint seeks damages in the form of disgorgement of Defendant's profits/restitution to customers, and either or both preliminary and permanent injunctive relief against Defendant MCI.[2]

On January 17, 2001, Defendant MCI filed a Notice of Removal, in which Defendant removed to this Court on alleged grounds of federal question jurisdiction (28 U.S.C. §§ 1331 and/or 1337). In its Notice of Removal, Defendant contends that plaintiff's claims necessarily arise under the Federal Communications Act (47 U.S.C. § 151 *et. seq.*) ("FCA," or the "Act"), in that they "involve a challenge to [MCI's] rates for telecommunications services, which is governed exclusively by federal law." Notice of Removal, Introduction ¶ 4. The Notice of Removal asserts that "federal law extinguishes" state law claims for disgorgement of profits or restitution, as little more than "artfully pled" challenges to FCA tariffs. *See id.*, Original Jurisdiction ¶ 2.

On January 24, 2001, the parties submitted, and the Court signed, a Stipulation and Order extending time for Defendant to respond to the Complaint to February 5, 2001, to allow the parties additional time for settlement talks, and to discuss their respective legal positions so as "to avoid the expense and burden of bringing and opposing an unnecessary motion to dismiss." Then on February 7, 2001, the parties submitted, and the Court signed, a second Stipulation and Order, which again indicated the parties were discussing settlement, referenced an anticipated motion to remand by Plaintiff and a motion to dismiss by Defendant, and gave Defendant until February 19, 2001 to respond to the Complaint (with its motion to dismiss) and Plaintiff until March 2, 2001 to file a motion to remand. Again, the parties stated a "desire to avoid the expense and burden of bringing and opposing an unnecessary Motion to Dismiss and an unnecessary Motion to Remand."

A third Stipulation and Order was submitted by the parties, and signed by the Court, on February 21, 2001. This Stipulation, like the others, indicated ongoing

---

1. The Court disregards the allegations as to the Doe Defendants.

2. The particular injunction Plaintiff seeks would require, *inter alia,* discontinuing the alleged false advertising/unfair practices, and/or engaging in corrective postings and advertising, and creating monitoring procedures to ensure future compliance with the law(s).

settlement talks, referenced the anticipated motions, and expressed a desire to "avoid the expense and burden" of these motions if possible. Defendant's time for response was extended to March 5, 2001, while Plaintiff was given until March 16, 2001 to file the anticipated motion to remand the case to state court.

On March 5, 2001, Defendant filed its Motion to Dismiss ("MTD"), seeking dismissal under Rule 12(b)(6) on grounds that: (1) Plaintiff's claims seek to challenge a tariff filed pursuant to the FCA, and as such are barred by the filed tariff doctrine; and/or (2) that in any case the Complaint fails to state a claim under the Business and Professions Code because no member of the public could possibly be "likely to be deceived" by the calling card promotion. *See* MTD at 2.

On March 5, 2001, along with the MTD, Defendant MCI also filed a Request for Judicial Notice, seeking notice pursuant to Federal Rule of Evidence 201 of the pre-paid calling card(s) at issue, along with the promotional materials which were apparently sent to customers, and of the Tariff that it has on file pursuant to the FCA.[3] On March 16, 2001, the parties filed, and the Court signed, a fourth Stipulation and Order. This agreement, referencing Defendant's already-filed MTD, and Plaintiff's anticipated Motion to Remand ("MTR"), expressed the parties' desire to

have the motions heard on the same date. Thus, the parties agreed to move the hearing date for the MTD, noticed for April 2, 2001, to its current setting of April 9, 2001 at 10:00 a.m., and to pre-set the hearing date for the MTR to be that same date and time.

On March 16, 2001, Plaintiff filed the MTR, noticed for a hearing on April 8, 2001. In the MTR, Plaintiff seeks an award of attorneys' fees for costs incurred in having to seek remand due to Defendant's improper removal. On March 23, 2001, Plaintiff filed an Opposition to the MTD ("MTD Opp."). Defendant filed an Opposition to the MTR ("MTR Opp.") on March 26, 2001. Each moving party has also filed a Reply with regard to its own motion ("MTD Reply," and "MTR Reply").

## II. FACTUAL ALLEGATIONS[4]

The Complaint alleges that Defendant MCI is a company that sells long distance phone service and pre-paid phone cards to residents of California. *See* Complaint ¶ 8. Plaintiff claims that for at least the past year, Defendant has engaged in an advertising or direct mail campaign wherein it sends mailings to California consumers urging them to "[s]ign up for MCI World-Com[SM] today and enjoy a $75 prepaid calling card absolutely FREE." *See id.* ¶ 10. The mailing allegedly contains in-

---

**3.** Defendant argues that the pre-paid phone card and promotional materials are proper for judicial notice because they are referred to, but not attached to, Plaintiff's Complaint. *See* Request for Judicial Notice at 1 (citing, *inter alia, Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) and *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n.4 (9th Cir.1996)). Defendant also argues that the tariff document is a proper subject of judicial notice on a motion to dismiss. *See id.* (citing, *inter alia, Mack v. South Bay Beer Distrib. Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986)). The Court need not reach the question of whether these items are proper subjects of

judicial notice because, as is revealed below, the Court does not address the substance of Defendant's Motion to Dismiss. Accordingly, there is no need for the Court to review the evidence offered through the Request for Judicial Notice. On this basis, the Request is DENIED.

**4.** Neither side has provided any additional "evidence" to augment or contradict the allegations in the Complaint. Therefore, the Court provides only a brief summary of the basic factual background.

structions on how to sign up for MCI, and encloses a pre-paid phone card which the consumer can activate by calling MCI to sign up for its services. On the pre-paid phone card is allegedly printed, in "big letters," the words "$75 FREE Prepaid Card." *See id.* ¶ 11. The card gives the caller 215 minutes of domestic calling. *See id.* ¶ 13.

Plaintiff asserts that this advertising/direct mail is deceptive and misleading, in that the value of the pre-paid calling card which consumers receive is substantially less than the $75.00 advertised, and is actually likely to be less than $25.00. *See id.* ¶¶ 9, 12, 14 (noting that MCI sells a pre-paid phone card with 250 domestic minutes for $25.00, and that MCI sells pre-paid phone cards for as little as 5.9¢/minute, at which rate the "$75.00" card is worth $12.69). Thus, Plaintiff asserts: "the 'value' of the pre-paid phone cards advertised by defendant was never $75.00, and ... this is a false, deceptive and misleading statement to illegally convince California consumers that they are purchasing a product at a discount." *Id.* ¶ 15. On this basis, Plaintiff seeks disgorgement/restitution, and an injunction.

## III. LEGAL STANDARDS

### A. *Standard for Removal on the Basis of Complete Preemption*

■ Generally, a state civil action is removable to federal court only if it might have been brought originally in federal court. *See* 28 U.S.C. § 1441. This "original jurisdiction" may be based either on diversity of the parties, or on the presence of a federal question in the state court complaint. On removal, the removing defendant bears the burden of proving the

existence of jurisdictional facts. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). There is also a " 'strong presumption' " against removal jurisdiction. *Id.* Because courts must "strictly construe the removal statute against removal jurisdiction," "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

■ Federal question jurisdiction is governed by the "well-pleaded complaint rule."[5] This provides that subject matter jurisdiction is proper only when a federal question appears on the face of a proper complaint. *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As a result, a plaintiff—as master of the complaint— "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Further, a defendant cannot remove solely "on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue" in the case. *Id.* at 393, 107 S.Ct. 2425. Thus, the federal question must appear on the face of the complaint, as alleged and controlled by the plaintiff.

■ "Put simply, the existence of federal jurisdiction depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims." *ARCO Environmental Remediation, L.L.C. v. Dept. of Health & Environmental Quality of the State of Montana,* 213 F.3d 1108, 1113 (9th Cir.2000); *see also Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Franchise Tax Bd. of California v. Construction Laborers Vacation*

---

**5.** Neither Plaintiff nor Defendant has alleged that jurisdiction in this Court may properly be based on diversity. Accordingly, the Court addresses only the presence of federal question jurisdiction.

*Trust for S. California,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). A plaintiff may defeat an anticipated removal by choosing not to plead independent federal claims. *See ARCO,* 213 F.3d at 1114.

"There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law. In such cases, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1107 (9th Cir.2000) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).[6] In these cases, even a well-pleaded state law complaint may be properly removed to federal court.

There are only a "handful" of those "'extraordinary' situations" in which complete preemption provides an adequate basis for removal of a state complaint. In the "many years" of the complete preemp-tion doctrine, the Supreme Court has identified only two federal acts whose preemptive force is so "extraordinary" as to warrant removal of any "well-pleaded" state law claim: (1) the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (*see Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425); and (2) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (*see Metropolitan Life Ins. Co.,* 481 U.S. at 65, 107 S.Ct. 1542). *See Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (citation omitted).[7]

Even the Supreme Court's extension of the complete preemption doctrine, originally formulated for the LMRA, to state law claims to which ERISA applies, was "reluctant." *Metropolitan Life Ins. Co.,* 481 U.S. at 65, 107 S.Ct. 1542. "Complete preemption is rare." *ARCO,* 213 F.3d at 1114. Moreover, "[u]nlike complete preemption, preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case." *Id.* (citing *Toumajian v. Frailey,* 135 F.3d 648, 655 (9th Cir. 1998)).[8] Thus, "ordinary" preemption is not jurisdictional.

---

**6.** Moreover, "under the artful pleading rule 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *ARCO,* 213 F.3d at 1114 (quoting *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. 2841). In *ARCO,* the Ninth Circuit identified three situations in which a "state-created cause of action can be deemed to arise under federal law"—(1) where federal law completely preempts state law, as under the LMRA or ERISA (*see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)), (2) where the claim is necessarily federal in character, such as a challenge to the collection of taxes (*see Brennan v. Southwest Airlines Company,* 134 F.3d 1405, 1409 (9th Cir.1998)), or (3) where the right to relief depends on resolution of substantial, disputed federal question(s) (*see Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). *See ARCO,* 213 F.3d at 1114.

**7.** A possible third basis for "complete preemption" was referenced in *Caterpillar* as having been noted in *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). *See Caterpillar,* 482 U.S. at 394 n. 8, 107 S.Ct. 2425 (a "state law complaint that alleges a present right to possession of Indian tribal lands necessarily asserts a present right to possession under federal law and is thus completely preempted...").

**8.** "[I]f a ... state law claim ... is preempted by § 1144(a) of ERISA, a defense sometimes called 'conflict preemption,' as long as [it] is not capable of characterization as an ERISA claim, removal is improper. The mere fact

■ To acquire the kind of "extraordinary" preemptive force that is required under the complete preemption doctrine, it appears that the federal statute at issue must meet three criteria: (1) it must contain a jurisdictional provision similar to Section 301 of the LMRA; (2) it must indicate that "Congress has clearly manifested an intent to make causes of action within the scope ... [of that statute] removable to federal court"; and (3) state law claims must fall within the scope of the civil enforcement statute. *See Boyle v. MTV Networks, Inc.,* 766 F.Supp. 809, 815 (N.D.Cal.1991) (citing (and quoting) *Metropolitan Life Ins. Co.,* 481 U.S. at 65–66, 107 S.Ct. 1542 and *Caterpillar,* 482 U.S. at 394–95, 107 S.Ct. 2425); *see also Robinson v. Michigan Consolidated Gas Co. Inc.,* 918 F.2d 579, 585 (9th Cir.1990)("[C]omplete preemption ... is extremely limited, existing only where a claim is preempted by [the LMRA]; where a state law complaint alleges a present right to possession of Indian tribal lands; and where state tort or contract claims are preempted by [the enforcement power of ERISA].")(internal citations omitted).

■ As Justice Brennan cautioned, in his *Metropolitan Life Ins. Co.* concurrence, "[i]n future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court." 481 U.S. at 68, 107 S.Ct. 1542 (emphasis in original). Consistent with the general predisposition against removal, and strict construction of the removal statutes, absent clear expression of congressional intent to have any state law claim arguably covered by a particular federal statute be removable to federal court, federal courts should hesitate to find removal jurisdiction on the basis of complete preemption. *See Gaus,* 980 F.2d at 566; *Metropolitan Life Ins. Co.,* 481 U.S. at 68, 107 S.Ct. 1542. A plaintiff generally remains master of any claims which are asserted.

### B. Standard for Award of Attorneys' Fees For Improper Removal

■ Upon granting a motion for remand, a district court may order that the plaintiff be awarded its "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see also Balcorta,* 208 F.3d at 1106 n. 6; *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 446–47 (9th Cir.1992). Such an award does not require a finding of "bad faith," or that the removal was "frivolous" or "vexatious." Indeed, fees may be awarded even where the removal was "fairly supportable." *See Balcorta,* 208 F.3d at 1106 n. 6; *Moore,* 981 F.2d at 447. Thus, whether or not such an award is appropriate is within the discretion of the trial court.

### C. Standard For a Motion to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See* Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is

---

that ERISA preemption under § 1144(a) ... is ... a defense, does not confer jurisdiction or authorize removal." *Toumajian,* 135 F.3d at 655 (internal citations omitted).

either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan*, 108 F.3d at 249 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'").

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). Moreover, the complaint must be read in the light most favorable to the plaintiff. *See id.* However, the Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See, e.g., Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir.1988).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, Tashima, and Wagstaffe, *Civil Procedure Before Trial*

§ 9:230 (2000). "It need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy not fatal to claim).

## IV. DISCUSSION

The two Motions presently before the Court, Plaintiff's Motion to Remand and Defendant's Motion to Dismiss, each touch on the issue of whether, and to what extent, Plaintiff's state law claims survive the preemptive power of the FCA. Because the Court must determine, first, whether subject matter jurisdiction is proper in this case, in other words whether Defendant's removal was proper, the Court addresses the Motion to Remand first. Finding that removal was not proper, and that this Motion must be granted, the Court need not address substantive claims of preemption that are raised by the Motion to Dismiss. Thus, the Court hereby GRANTS the Motion to Remand, and ORDERS this case to be returned to the state court from which it was removed, and hereby DENIES the Motion to Dismiss, without reaching its substance.

### A. Plaintiff's Motion to Remand ("MTR") Must Be Granted

Defendant argues, in its Notice of Removal and again in opposing the MTR, that "the complementary doctrines of complete preemption and artful pleading" confer federal question jurisdiction on this case, rendering removal and decision by this Court proper. *See* Notice of Removal, Original Jurisdiction ¶ 2; *see also* MTR

Opp. at 4.[9]

In other words, Defendant argues that Plaintiff should not be permitted to "artfully plead" around the federal questions that are raised by her state court Complaint, because the state law claims it raises are subject to "complete preemption" by the FCA, a statute that has "extraordinary" preemptive force. *See* MTR Opp. at 6.[10] Relying primarily on cases holding that the FCA preempts state (or federal) claims which directly or indirectly challenge a tariff filed pursuant to the Act, Defendant argues that removal was appropriate. *See* MTR Opp. at 4–13 (citing, most notably, *AT & T Co. v. Central Office Tel., Inc.,* 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) [hereinafter *"Central Office "*]).

It may be that some or all of Plaintiff's claims (or remedies) are preempted/disallowed by the FCA.[11] However, even if this is true, this does not answer, and Defen

dant overlooks, the remaining issue of whether this affords an adequate basis for removal jurisdiction.

Relying primarily on the Seventh Circuit's decision in *Cahnmann,* Defendant argues that under the broad preemptive sweep of the FCA as described in *Central Office,* Plaintiff's state claims are preempted (and, ultimately, barred) and should be heard in federal court. *See* MTR Opp. at 6–9 (citing, *inter alia, Cahnmann,* 133 F.3d at 487–88). Defendant is correct that the FCA has a broad preemptive scope, and it is certainly possible that some or all of Plaintiff's claims will be preempted by its provisions, and/or by the "filed rate doctrine" that has been extended to the FCA from its original creation in relation to the Interstate Commerce Act ("ICA"). *See Central Office,* 524 U.S. at 222, 118 S.Ct. 1956 ("the century-old 'filed rate doctrine' associated with the ICA applies to

---

**9.** It is worth noting that this same Defendant has apparently made the same or similar argument to at least two other district courts; in both cases Defendant's argument was rejected, and remand was granted. "In the instant case, Defendants base their claims for removal ... on the 'complementary doctrines of complete [preemption] and artful pleading.'" *Crump v. WorldCom, Inc.,* 128 F.Supp.2d 549, 556 (W.D.Tenn.2001) (quoting a notice of removal filed by, *inter alia,* named defendant MCI Worldcom Communications, Inc.). *See also Minnesota v. Worldcom, Inc.,* 125 F.Supp.2d 365, 370 (D.Minn.2000) (noting that "Worldcom ... relies extensively on the Seventh Circuit's decision in *Cahnmann* ..." and distinguishing and criticizing that opinion).

**10.** Though "artful pleading" and "complete preemption" ostensibly remain separate doctrines, they are so intertwined both in Defendant's argument and in the available case law that they appear to raise the same question: are Plaintiff's claims so "completely preempted" that it is only by "artful pleading" that she manages to avoid a "federal question" in the Complaint. In other words, it seems that

"complete preemption" is a prerequisite of sorts to any finding that a plaintiff has "pled around" what would otherwise be a federal claim. *See, e.g., Rivet,* 522 U.S. at 475, 118 S.Ct. 921 ("The artful pleading doctrine allows removal *where federal law completely preempts a plaintiff's state-law claim.*") (emphasis added); *Crump,* 128 F.Supp.2d at 559–60 (recognizing that the "artful pleading" doctrine is subsumed by "complete preemption"); *Minnesota,* 125 F.Supp.2d at 373 (same); *Heichman v. AT & T Co.,* 943 F.Supp. 1212, 1219 n. 3 (C.D.Cal.1995) (the two doctrines "collapse"). For this reason, and because Defendant does not articulate a basis for removal based on "artful pleading" that is *separate* from its assertion that Plaintiff's claims are "completely preempted," the Court does not separately consider the application of the "artful pleading" doctrine.

**11.** The Court does not reach this question, as a determination of FCA preemption of Plaintiff's claims is unnecessary to decide whether removal was proper on that basis. The Court simply assumes, without deciding, that some or all of Plaintiff's claims would be preempted.

the [FCA] as well."). In other words, it is possible that some or all of the claims may ultimately be governed by federal law.

■ However, what Defendant overlooks is that the issue of federal "preemption" is wholly separate from whether a given state law claim is subject to "complete preemption." What Defendant describes is "defensive" or "ordinary" preemption, of the sort which may afford an *affirmative defense* in state court. This is not alone sufficient to confer removal jurisdiction, absent an expression by Congress of an intent for the statute to have this effect. There is no such clear expression of intent in either the FCA or its legislative history. *See, e.g., Marcus v. AT&T Corp.*, 138 F.3d 46, 53 (2d Cir.1998) (observing that "'the mere fact that the [FCA] governs certain aspects of [AT & T's] billing relationship with its customers does not mean that [the appellants'] claims arise under the Act."'; rejecting argument that the FCA completely preempts state claims) (alterations in original). Indeed, the FCA contains a "savings clause" *preserving* other (state) common law or statutory remedies. *See* 47 U.S.C. § 414.

There does not appear to be any Ninth Circuit authority finding that the FCA either does or does not "completely preempt" state law claims. There are a few cases supporting Defendant's position that it does. However, the Court finds that the weight of authority, as well as the more consistent reasoning, supports a finding that it does not. *See, e.g., Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 486–87 (2d Cir.1998) (removal improper based on FCA preemption); *Marcus*, 138 F.3d at 53–55 (2d Cir.1998) (criticizing *Cahnmann*, finding no basis for removal in statutory or common law preemption); *Heichman*, 943 F.Supp. at 1219 (finding FCA does not completely preempt state claims); *Boyle*, 766 F.Supp. at 814–16 (same); *Crump*, 128 F.Supp.2d at 554 (no removal based on FCA "complete preemption" or "artful pleading"); *Minnesota*, 125 F.Supp.2d at 369–73 (same, criticizing *Cahnmann*).[12] *But see Cahnmann*, 133 F.3d at 487–491 (finding removal proper on the basis of preemption); *In re Comcast Cellular Telecommunications Lit.*, 949 F.Supp. 1193, 1198–1205 (E.D.Pa.1996) (relying primarily on the Second Circuit's now-repudiated *Nordlicht* decision[13] to find removal proper on the basis of FCA preemption); *Deford v. Soo Line Railroad Co.*, 867 F.2d 1080, 1088–90 (8th Cir.1989) (affirming remand denial).

■ The Court joins this weight of authority, and finds that the FCA, even if it may "preempt" some or all of Plaintiff's claims, does not "completely preempt" those claims so as to confer an adequate basis for removal to federal court. Accordingly, this case should be sent back to state court, where Defendant may again raise FCA preemption. Therefore, the Court hereby GRANTS Plaintiff's Motion

---

**12.** Other cases also support this conclusion that the FCA does not support removal. *See also, e.g., Guglielmo v. WorldCom, Inc.*, 2000 WL 1507426, *1–6 (D.N.H.2000) (another case rejecting this Defendant's preemption argument(s)); *Bauchelle v. AT & T Corp.*, 989 F.Supp. 636, 640–49 (D.N.J.1997); *Sanderson, Thompson, Ratledge & Zinny*, 958 F.Supp. 947, 952–62 (D.Del.1997); *Ready Transportation, Inc. v. Best Foam Fabricators, Inc.*, 919 F.Supp. 310, 312–15 (N.D.Ill.1996).

**13.** In *Marcus*, the Second Circuit expressly recognized that, after *Metropolitan Life Ins. Co.*, its prior conclusion in *Nordlicht v. New York Tel. Co.*, 799 F.2d 859, 861–62 (2d Cir. 1986) that state claims covered by the FCA could be preempted by federal common law was either directly or indirectly contrary to law. Accordingly, this decision is no longer good law in the Second Circuit. *See Marcus*, 138 F.3d at 55.

to Remand, and ORDERS that the case be immediately returned to state court.

## B. The Court Need Not Reach Defendant's Motion to Dismiss ("MTD")

Therefore, even if some or all of Plaintiff's claims must fail, due to the preemptive force of the FCA, this does not afford a basis for removal jurisdiction. Instead, Defendant is fully entitled to assert FCA preemption as a defense in state court. The California courts have clearly demonstrated an awareness of, and a willingness to apply, FCA preemption as a possible barrier to state law claim. *See Spielholz v. Superior Court,* 86 Cal.App.4th 1366, 1377–81, 104 Cal.Rptr.2d 197 (2001) (applying "filed rate doctrine"); *Ball v. GTE Mobilnet of California,* 81 Cal.App.4th 529, 535–44, 96 Cal.Rptr.2d 801 (2000) (affirming demurrers to Section 17200 claims based on FCA preemption); *Duggal v. G.E. Capital Comm. Services, Inc.,* 81 Cal. App.4th 81, 87–95, 96 Cal.Rptr.2d 383 (2000) (finding common law claims preempted by "filed rate doctrine"); *Day v. AT & T Corp.,* 63 Cal.App.4th 325, 335–40, 74 Cal.Rptr.2d 55 (finding false advertising claims under Sections 17200 and 17500 were not preempted by the "filed rate doctrine").

Therefore, the Court will not, and may not, prejudge whether any or all of Plaintiff's claims (or remedies) are preempted. This is a question which Defendant is free to raise in state court. Having no jurisdiction to decide this case, it having been mooted by the Court's decision on remand, the Court DENIES Defendant's Motion to Dismiss.

## C. The Court Awards Reduced Attorneys' Fees to Plaintiff

 In the Motion to Remand, Plaintiff also seeks reimbursement of a total of $15,295.00 in attorneys' fees and costs ex-

pended researching and writing the Motion, as well as Plaintiff's opposition to the MTD. Having determined that remand is appropriate, pursuant to 28 U.S.C. § 1447(c), due to the lack of subject matter jurisdiction, the Court now turns to whether a discretionary award of fees is warranted. In this case, the Court concludes that it is, though not in the amount sought by Plaintiff. Instead, the Court concludes that Plaintiff reasonably expended $7,500.00 in fees and costs in pursuit of a remand. Thus, the Court hereby ORDERS Defendant to pay Plaintiff that amount.

Fees are appropriate in this case because Defendant's claim of complete preemption under the FCA, while "fairly supportable" under the authority cited by Defendant, is nonetheless contrary to law, as it has been expressed by the weight of authority previously cited, and as it has been clearly elucidated by two California district courts. *See Heichman,* 943 F.Supp. at 1219; *Boyle,* 766 F.Supp. at 814–16. A finding of "bad faith" or "frivolousness" is not a prerequisite to an award of fees under Section 1447(c). The Court, in its discretion, simply makes an equitable determination as to whether Plaintiff should be forced to bear its own costs, or whether costs should be shifted, in whole or in part, to the Defendant. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of *just* costs and any actual expenses, including attorney fees, incurred as a result of the removal.") (emphasis added). In this case, it would seem inequitable to force Plaintiff to bear all of the costs of seeking remand. The more "just" outcome is to require Defendant to share that cost.

Moreover, although no finding of "bad faith" or other similar finding is required for an award of fees, "[t]he nature of the conduct of the removing defendant[ ] is

nevertheless relevant to the exercise of discretion." *In re Hotel Mt. Lassen, Inc. v. Winograde*, 207 B.R. 935, 943 (Bankr. E.D.Cal.1997) (citations omitted). In this case, that fact that this Defendant has on at least two prior occasions [14] had its claim of a right of removal premised on complete preemption under the FCA rejected by a federal district court, makes it all the more unjust for Plaintiff to bear the costs of Defendant's actions.[15] A fee award under Section 1447(c) is not a punitive measure. Rather, it is reimbursement to Plaintiff of unnecessary litigation costs that were inflicted by Defendant. *See Moore*, 981 F.2d at 447.

Therefore, in this case it seems most equitable for Defendant to bear the costs incurred by Plaintiff in seeking remand in this case. It is also appropriate, in that the Motion to Dismiss would never have been filed if Defendant had not improperly removed, to shift costs incurred in opposing that Motion. Therefore, Plaintiff is entitled to recover for all of its hours reasonably expended on these tasks.

However, the Court retains discretion (and presumably a duty) to ensure that the amount of attorneys' fees requested is "reasonable." Presumably, similar considerations apply to fees under Section 1447(c) as to other fee-shifting statutes. Namely, in addition to showing entitlement to an award, "the fee applicant bears the burden of ... documenting the appropriate hours expended and hourly rates."

*Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Moreover, the Court is under an independent duty to reach its own "lodestar" value: "the number of hours reasonably expended ... multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. 1933. As the Ninth Circuit has indicated, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000) (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933).

As an initial matter, the Court notes that the documentation of the hours expended by Plaintiff's counsel, while somewhat summary, is sufficient to meet the somewhat lenient documentation standard in the Ninth Circuit. *See, e.g., Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir.2000) (applicant "can meet his burden—although just barely—by simply listing his hours and 'identify[ing] the general subject matter of his time expenditures.'") (citation omitted). The hours breakdown lists 30.7 hours spent by Plaintiff's counsel on the Motion to Remand, and an additional 9.0 hours spent on opposing the Motion to Dismiss. Plaintiff's counsel indicates a billing rate of $350/hour, though without a description of his background, education or experience in apparent justification of that hourly rate. Nor does counsel indicate whether this is his "usual" billing rate, or

---

**14.** There are actually three cases previously cited in which MCI and/or Worldcom was the named defendant, and in which the plaintiff's motion to remand was granted on the same grounds. All of these were decided prior to Defendant's January 17, 2001 removal of this case. *See Crump*, 128 F.Supp.2d at 549 (ruling issued January 8, 2001); *Minnesota*, 125 F.Supp.2d at 365 (ruling issued December 27, 2000); *Guglielmo*, 2000 WL 1507426 at *1 (ruling issued July 27, 2000). Given a prox-

imity in time between the *Crump* order and removal in this case, however, the ruling may not have been received before Defendant acted.

**15.** Though the Court does not necessarily ascribe knowledge of all these decisions to Defendant, it does note a commonality of counsel in at least the two published decisions, *Crump* and *Minnesota*.

provide any list of comparable awards. *See* Declaration of Michael Linfield.

■ Defendant provides almost no opposition to the request for fees, and makes no effort to specifically address the *amount* thereof. In fact, Defendant's only opposition is a single statement in the final paragraph of its opposing memorandum that because the MTR should be denied, so too should the request for fees.[16] Nonetheless, the Court conducts its own review of the fees requested, and finds that both the hourly rate and the number of hours billed exceed a reasonable level for the (duplicative) Motion to Remand and opposing papers. First, a billing rate of $350/hour, for what appears to be a solo practice, and without any indication of Plaintiff's counsel's experience, or any other argument in support of this rate, is excessive. The Court will instead award fees at a rate of $200/hour. Furthermore, a total of 39.7 hours expended on the Motion to Remand and opposing papers is a bit more than seems reasonable under the circumstances. The Court trims this figure to a total of 37.5 hours, for the two documents.

Accordingly, the Court finds that a reasonable level of fees to expend is $200/hour multiplied by a total of 37.5 hours, for a total of $7,500.00. This is the figure which Plaintiff may recover from Defendant in reimbursement for its expenses unnecessarily incurred. Therefore, the Court hereby GRANTS Plaintiff's request for fees, and ORDERS Defendant to pay Plaintiff a total award of $7,500.00, by no later than thirty (30) days of the date of entry of this Order.

---

16. This kind of disregard for the possibility that the Court may disagree with Defendant's argument is improvident, to say the least.