**MATTEL, INC., a Delaware corporation, Plaintiff,**

v.

**Carter BRYANT, an individual; and Does 1 through 10, inclusive, Defendant.**

**And Related Counterclaims**

**No. CV 04–9059 NM (RNBX).**

United States District Court, C.D. California.

March 4, 2005.

Tania Marie Krebs, John B. Quinn, Michael T. Zeller, Jon D. Corey, Quinn Emanuel Urquhart Oliver and Hedges, Los Angeles, CA, for Plaintiff.

David K. Caplan, Ellie Schwimmer, Keats McFarland & Wilson, Beverly Hills, CA, Douglas A. Wickham, Keith A. Jacoby, Robert F. Millman, Littler Mendelson, Los Angeles, CA, for Defendant.

ORDER DENYING PLAINTIFF MATTEL, INC.'S MOTION TO REMAND AND CERTIFYING QUESTION FOR INTERLOCUTORY REVIEW

MANELLA, District Judge.

## I. INTRODUCTION

On April 27, 2004, Mattel, Inc. ("Mattel"), the world's largest manufacturer and marketer of toys, dolls, games, and stuffed toys and animals, filed the instant Complaint against its former employee, Carter Bryant ("Bryant"), in the Superior Court for the County of Los Angeles. The Complaint fails to state the amount in controversy and asserts generically-phrased causes of action for: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; (4) unjust enrichment; and (5) conversion. On May 14, 2004, Bryant filed a Notice of Removal. On August 20, 2004, the court granted Mattel's motion to remand, finding that Bryant had failed to demonstrate the presence of either federal question jurisdiction or diversity jurisdiction. On November 2,

2004, Bryant filed a second Notice of Removal. On December 7, 2004, MGA Entertainment ("MGA"), pursuant to stipulation and order, intervened as a defendant. Pending before the court is Mattel's Motion to Remand.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Allegations in Mattel's Complaint

Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Compl. ¶ 9. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement, in which he agreed not to "engage in any employment or business other than for [Mattel], or invest or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Id. ¶ 10. Bryant assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment. Id.

Bryant also completed Mattel's Conflict of Interest Questionnaire. Id. ¶ 11. Bryant certified that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Id. Bryant agreed to notify Mattel of any future events raising a conflict of interest. Id.

The Complaint asserts that, "[i]n late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor ... by entering into an agreement with the competitor, during the time [he] was employed by Mattel ...." Id. ¶ 12. "Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a 'top priority' basis." Id. Furthermore, it "provided ... that Bryant would receive royalties and other consideration for sales of products on which [he] provided aid or assistance; that all work and services furnished by Bryant to the competitor under the agreement would be considered 'works for hire'; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to the competitor." Id. The Complaint also alleges that "Bryant converted, misappropriated and misused Mattel property and resources for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor." Id.

In support of its first motion to remand, Mattel provided a copy of this agreement between Bryant and MGA. See Zeller Decl., Ex. 9 (MGA Agreement). Pursuant to the agreement, signed September 18, 2000, Bryant agreed to provide product design services for MGA's line of "Bratz" dolls (the "Bratz"). Id.[1] In return, MGA agreed to pay Bryant $5,500 per month for the first six months and $5,000 per month for the next three months. Id. MGA also agreed to pay Bryant a 3% royalty on the Bratz he worked on. Id.

### B. The First Notice of Removal

On May 14, 2004, pursuant to 28 U.S.C. § 1441, Bryant filed his first notice of removal.[2] Bryant argued that this court had subject matter jurisdiction under both 28

---

1. Bryant's last day of employment at Mattel was October 20, 2000.

2. 28 U.S.C. § 1441 provides in part:
 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction).[3] First, Bryant asserted that the court had jurisdiction under § 1331 because Mattel's claims likely implicated the rights to the Bratz and, therefore, would "require construction of federal intellectual property laws . . . ." Opp. to First Mot. to Remand at 11. Second, Bryant contended that the court had jurisdiction under § 1332 because he was of diverse citizenship from Mattel and the rights to the Bratz, worth "millions," were in controversy. *Id.* at 1–2, 5–6.

On June 14, 2004, Mattel filed a motion to remand, arguing it did not know whether the Bratz were in controversy because it did not know whether Bryant developed the Bratz while still employed by Mattel. *See, e.g.,* July 12, 2004 Rep. at 4 (disclaiming knowledge of "whether rights to Bratz are indeed at stake here").

**3.** 28 U.S.C. § 1331 provides:
> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1332 provides:
> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . .

**4.** This article provided:
> The history of the Bratz is intertwined with Mattel. MGA says the Bratz were designed by Carter Bryant, a former member of [Mattel's] Barbie team. Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998. Mattel declined to comment.
> Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. Mr. Bryant, through MGA, declined to be interviewed.

### C. August 20, 2004 Order

On August 20, 2004, the court granted Mattel's motion to remand, finding that Bryant had failed to demonstrate the presence of subject matter jurisdiction. First, the court found that Bryant had failed to demonstrate federal question jurisdiction because the face of the Complaint asserted only state law claims. *See* Aug. 20, 2004 Order at 8. Second, the court found that Bryant had failed to demonstrate diversity jurisdiction because he had not shown that the rights to the Bratz were in controversy. *See id.* at 6.

### D. Events Occurring Between the First and Second Notices of Removal

On August 12, 2004, Mattel produced to Bryant a July 18, 2003 Wall Street Journal article that suggested Bryant had copied a scrapped Mattel project, known as "Toon Teens," in creating the Bratz. Not. of Removal ¶ 21.[4]

> The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads—with their pursed lips and cartoonish eyes—are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.
> Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. Mattel declined to comment. She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet—they were all the same" as the Bratz. Ms. Martinez declined to comment . . . .
> This year, closely held MGA expects revenue of about $800 million—with 65% of that coming from the Bratz . . . .

Zeller Decl., Ex. 35 (Maureen Tkacik, *Dolled Up: To Lure Older Girls, Mattel Brings in Hip–Hop Crowd; It Sees Stalwart Barbie Lose Market Share, So 'Flayas' Will Take on the 'Bratz',* Wall St. J., July 18, 2003, at A1).

■ On August 16, 2004, upon Bryant's specific request, Mattel produced to Bryant drawings of the Toon Teens. Jacoby Decl. ¶ 5. Mattel also produced the copyright registration for the Toon Teens drawings filed November 28, 2003, four years after the drawings were allegedly created. Not. of Removal ¶ 21; Zeller Decl. ¶ 27.[5] Mattel had failed to produce these documents in response to Bryant's June 14, 2004 comprehensive Request for Production. Jacoby Decl. ¶ 5; Zeller Decl., Ex. 36; Second Zeller Decl., Ex. 6.[6] When Mattel eventually produced the Toon Teens documents in August, it maintained: "Mattel does not believe the Toon Teens drawings and documents ... are responsive to defendant's propounded document requests." Zeller Decl., Ex. 36.

On September 8, 2004, Bryant filed a cross-complaint against Mattel asserting claims for unfair competition, rescission, declaratory relief, and fraud. *See* Cross–Compl. On September 9 and 10, 2004, Bryant filed papers in state court arguing that Mattel's action was implicitly premised upon the allegation that Bryant copied the Toon Teens in developing the Bratz. Zeller Decl., Exs. 8 (Bryant's Mot. for Protective Order) & 45 (Bryant's Case Management Statement).

On October 8, 2004, Mattel again produced to Bryant the above-mentioned Toon Teens documents, this time in response to Bryant's discovery request seeking "[a]ll documents ... that evidence, relate or refer to Toon Teen's [sic] similarity to any toy sold under the trademark or trade name 'Bratz.'" Jacoby Decl. ¶ 8; Second Zeller Decl., Ex. 7.

On October 11, 2004, Mattel produced to Bryant evidence of a document-exchange agreement it has with a company being sued by MGA for infringing the copyrights to the Bratz. Jacoby Decl. ¶ 9 & Ex. 7. The company had requested that Mattel send it documents relating to the Toon Teens "so that [it] [could] challenge the originality of MGA's design [in the Bratz] and [MGA's] corresponding claim to copyright." Jacoby Decl., Ex. 7.

On October 13, 2004, Mattel produced to Bryant an anonymous letter received by Mattel's CEO in August 2002, alleging that Bryant had stolen the idea for the Bratz from Mattel. Jacoby Decl. ¶ 10 & Ex. 8. Mattel also produced documents indicating that this letter triggered an investigation in 2002 into Bryant's conduct. *Id.*

Mattel has aggressively pursued discovery relating to the Bratz. *See* Not. of

---

**5.** Copyright registration is a prerequisite for bringing a copyright infringement action. 17 U.S.C. § 411(a).

**6.** Bryant requested all documents: (1) "that support [the] contention ... that Bryant ... converted, used, sold, assigned or transferred any Mattel work product ... created by any Mattel employee other than Bryant"; (2) "that support [the] contention ... that any product sold at any time by [MGA] under the trade name 'Bratz' originated from, is derived from, is based on, copies, incorporates, or is substantially or confusingly similar to any design or work product owned at any time by Mattel ... or created by any Mattel employee"; (3) "that [Mattel] contend[s] ... [were] created by any employee of Mattel ... and improperly used by Bryant for his own gain,

or the gain of any third party"; (4) that evidence, relate, or refer to the contention that "Bryant misappropriated any property"; (5) that "evidence, relate or refer to any damages [Mattel] contend[s] to have suffered as the result of any act or omission of Bryant"; (6) that "evidence, relate or refer to the items or rights that [Mattel] contend[s] Bryant converted, improperly used, sold, assigned or otherwise transferred"; (7) that "evidence, relate or refer to the creation of 'Bratz' dolls"; and (8) that "evidence, relate or refer to any art work or other work product done at Mattel that [Mattel] contend[s] Bryant utilized in connection with his creation of anything for MGA, including but not limited to ... 'Bratz.'" Second Zeller Decl., Ex. 6 (Request for Production of Documents).

Removal ¶ 21. In late October 2004, "Mattel[ ] ... informed ... Bryant it would no longer honor a previously agreed upon discovery limitation[ ] that Mattel would seek only documents related to the 'first generation of Bratz designs.'" Not. of Removal ¶ 21; Jacoby Decl. ¶ 13 & Exs. 9, 13, 14.

### E. Second Notice of Removal

On November 2, 2004, Bryant filed a second Notice of Removal based upon both § 1331 (federal question) and § 1332 (diversity) jurisdiction.[7] Bryant asserts that the Complaint presents a federal question because events occurring since the first removal and remand demonstrate that Mattel's conversion claim involves the rights to the Bratz and is completely preempted by the Copyright Act. Not. of Removal ¶¶ 10, 29, 34. Bryant also contends that there is diversity jurisdiction because he and Mattel are of diverse citizenship and the same facts demonstrate that the amount in controversy exceeds $75,000. See id. ¶¶ 9–24.

### F. Events Occurring After Bryant Filed the Second Notice of Removal

On November 2, 2004, Bryant filed a Complaint in federal court seeking a declaratory judgment that the Bratz do not violate Mattel's copyrights.

From November 4 through November 8, 2004, Mattel's lead counsel took Bryant's deposition and questioned Bryant regarding not only the "substantial similarity" between the Toon Teens and the Bratz, but also the amount of royalties Bryant had received from the Bratz. Jacoby Decl., Ex. 1 (Bryant Depo.) at 254–58, 564–67, 703. When pressed for the relevance of the latter line of questioning, Mattel's counsel stated: "Damages." Id. at 703. Bryant testified that he had received approximately $10 million in Bratz-related royalties. Id. at 705.

On December 1, 2004, Mattel filed the instant Motion to Remand. On December 7, 2004, by stipulation and order, MGA intervened as a defendant.[8] In the stipulation, MGA asserted that "it has a significantly protectable interest relating to the subject matter of the action, ... the disposition of the action may impair or impede [its] ability to protect its interest absent intervention, and [its] interest is not adequately represented by the existing parties." Stip. & Order Permitting Intervention at 1.[9]

Also on December 7, 2004, Mattel filed a Motion to Dismiss Bryant's Complaint for Declaratory Relief arguing, in part, that

---

7. An hour before filing his second Notice of Removal, Bryant faxed Mattel an offer to settle the case for an amount hundreds of thousands of dollars over the jurisdictional minimum. Not. of Removal ¶ 25; Zeller Decl. ¶ 35 & Ex. 51. The timing of Bryant's offer, although suspicious, does not detract from the fact that Mattel has not pursued the offer, which, by its own terms, remained open for seven days. Not. of Removal ¶ 25; Zeller Decl. ¶ 35 & Ex. 51. Furthermore, despite Mattel's arguments to the contrary, the scope of the offer's releases do not render it meaningless, especially in light of the fact that Mattel does not argue that the offer would have been acceptable if more narrowly tailored.

8. MGA, like Mattel, has its principal place of business in California. Compl. ¶ 1; Second

Zeller Decl. ¶ 8 & Exs. 14–15. MGA is also incorporated in California. Second Zeller Decl. ¶ 8 & Ex. 16. 28 U.S.C. § 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

9. MGA acquired the first Bratz drawings from Bryant in late 2000. Woods Decl. ¶ 2. In the first two years of sales of the Bratz, MGA earned "tens of millions of dollars." Id. ¶ 10. MGA employs over 200 people in Southern California. Id. "Of those, the majority are directly or indirectly involved in production, marketing and sales of the 'Bratz' product line." Id.

Bryant's case regarding the copyrights to the Bratz "attempts to get a federal court to preemptively decide issues presented in [Mattel's action against Bryant]." Mot. to Dismiss Comp. for Decl. Rel. at 1.

After both Bryant and MGA filed Oppositions to the instant Motion to Remand, Mattel filed two reply briefs. Mattel argued, in part, that MGA's post-removal intervention destroyed the possibility of diversity jurisdiction. The court ordered supplemental briefing on the issue. *See* Jan. 12, 2005 Order. On January 25, 2005, the court ordered further briefing on two issues: (1) whether MGA had properly intervened under Rule 24 of the Federal Rules of Civil Procedure; and (2) whether MGA was an "indispensable party" under Rule 19(b). *See* Jan. 25, 2005 Order. For the reasons set forth below, the court denies Mattel's Motion to Remand.

## III. ANALYSIS

Generally, a state civil action is removable only if it could have been filed originally in federal court. 28 U.S.C. § 1441. This "original jurisdiction" may be based upon either the presence of a federal question or the diversity of the parties. *See Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't Inc.,* 177 F.Supp.2d 1050, 1054–55 (C.D.Cal.2001) (Collins, J.). On removal, the removing defendant bears the burden of proving the existence of the jurisdictional facts. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). There is a "strong presumption" against removal. *Id.* When a plaintiff moves to remand, the removing party has the burden of establishing by a preponderance of the evidence that removal was proper. *See Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403–04 (9th Cir.1996).

In its Motion to Remand, Mattel argues: (1) that Bryant was precluded from removing this action without any "new evidence";

(2) that removal was untimely; (3) that Bryant waived his right to remove; and (4) that Bryant's removal fails on the merits.

### A. Preclusion

Mattel argues that Bryant was precluded from removing a second time without any "new" evidence. Mot. at 1, 15. Successive removals are not necessarily barred. 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.30[4] (3d ed.2004); *Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263, 266–68 (5th Cir.2001); *Benson v. SI Handling Sys., Inc.,* 188 F.3d 780, 782–83 (7th Cir.1999); *Doe v. American Red Cross,* 14 F.3d 196, 198 (3d Cir. 1993). "For example, if a district court remands a case to state court because the defendant failed to prove the jurisdictional amount, but the plaintiff after remand discloses that the amount in controversy is greater than the statutory amount in controversy, the defendant may file a second notice of removal." 16 Moore et al., *supra* § 107.30[4] (citing *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527 (6th Cir.1999)). For the reasons discussed in detail below, the court finds new evidence permitted Bryant to filed a second notice of removal. *See infra* Part III.D.2.

### B. Timeliness

Mattel argues that Bryant's second Notice of Removal was untimely. Mot. at 2, 5–8. The timeliness of removal is governed by 28 U.S.C. § 1446(b), which provides:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b). This time limit "is triggered only when the information sup-

**1090**

porting removal is unequivocally clear and certain." Moore et al., *supra* § 107.30[3][a][i][C] (citing *Bosky v. Kroger Texas, LP.*, 288 F.3d 208, 211 (5th Cir. 2002); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999)). *See also* Schwarzer et al., *Cal. Prac. Guide; Fed. Civ. Pro. Before Trial* § 2:914.5 (2004) ("The information supporting removal (i.e., federal question or diversity of citizenship) must be 'unequivocally clear and certain' to start the 30–day removal period running.") (emphasis omitted) (quoting *Bosky*, 288 F.3d at 211).

■ Without conceding the existence of any basis for removal, Mattel argues that Bryant had "unequivocally clear and certain" information supporting removal more than 30 days before he filed the notice of removal on November 2, 2004. First, Mattel argues that the action became removable on federal question grounds when Bryant received the Complaint. Second, Mattel asserts that the action became removable on diversity grounds more than 30 days before Bryant filed the notice because prior to October 2004, Bryant: (1) had received the Wall Street Journal article and the Toon Teens documents; and (2) had filed papers in state court arguing that Mattel's case was premised upon the allegation that Bryant "stole the 'Bratz' concept from Mattel."

As to federal question jurisdiction, Mattel's position contradicts its own assertion—and this court's conclusion—that the Complaint failed to state a federal question on its face. *See* Aug. 20, 2004 Order at 8;

*see also infra* Part III.D.1. It also contradicts Mattel's assertion—and this court's conclusion—that there is insufficient pre-removal evidence to permit the court to find complete copyright preemption and thus federal question jurisdiction. *See infra* Part III.D.1. Accordingly, the 30–day removal period could not have been triggered by "unequivocally clear and certain" evidence of federal question jurisdiction prior to removal.

As to diversity jurisdiction, it was not "unequivocally clear and certain" more than 30 days prior to Bryant's November 2, 2004 removal that the rights to the Bratz—and thus more than $75,000—were in controversy. Bryant's receipt of the Wall Street Journal article provided no clear notice that Mattel would assert in this litigation that Bryant stole the Bratz idea from Mattel. Indeed, the article twice noted that Mattel had declined to comment. Similarly, the importance of Mattel's August 16, 2004 document production was diminished by Mattel's own disclaimer of the documents' relevancy. Finally, as Mattel concedes, how Bryant has characterized Mattel's case is not dispositive of this court's jurisdiction. *See* Mattel's Obj. to Torres Decl. at 4. Because the removal period did not start running more than 30 days before November 2, 2004, Bryant's removal was not untimely.

### C. Waiver

■ Mattel argues that Bryant waived his right to remove by filing permissive counter-claims in state court after the case had become removable. Mot. at 2–3, 8–13.[10] "[I]t is well established that a

---

**10.** Mattel also argues that Bryant waived his right to remove by moving for a protective order and engaging in discovery in state court. Mot. at 2–3, 12–13. A defendant does not waive his right to remove by engaging in this sort of litigation activity. *See* 16 Moore et al., *supra* § 107.18[3][b] (defendant does not waive right to remove by "moving for confidentiality order"). *See also Acosta v.*

*Direct Merchs. Bank*, 207 F.Supp.2d 1129, 1131 (S.D.Cal.2002) (Whelan, J.) ("In general, the right of removal is not lost by action in state court short of proceeding to an adjudication on the merits.") (quotation marks omitted). Mattel cites only one case, *Chavez v. Kincaid*, 15 F.Supp.2d 1118 (D.N.M.1998), for the proposition that a defendant waives his right to remove by engaging in discovery.

defendant 'may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum.'" *Acosta v. Direct Merchs. Bank,* 207 F.Supp.2d 1129, 1131–32 (S.D.Cal.2002) (Whelan, J.) (quoting *Resolution Trust Corp. v. Bayside Developers,* 43 F.3d 1230, 1240 (9th Cir. 1994)). A defendant so manifests his intent to remain in state court if he files permissive counter-claims in state court after the case has become removable. *See Moore v. Permanente Med. Group, Inc.,* 981 F.2d 443 (9th Cir.1992); *Schmitt v. Insurance Co. of N. Am.,* 845 F.2d 1546, 1548 (9th Cir.1988); *Acosta,* 207 F.Supp.2d at 1131–33; *California Republican Party v. Mercier,* 652 F.Supp. 928, 931 (C.D.Cal. 1986) (Pfaelzer, J.). *See also* Moore et al., *supra* § 107.18[3][a] (a defendant waives right to remove by "[p]articipating in state court proceedings, such as seeking some form of affirmative relief, when the defendant is not compelled to take the action"). "However, [for there to be a waiver,] it must [have] be[en] unequivocally apparent that the case [was] removable [before the defendant engaged in the litigation conduct], [ ] the intent to waive the right to remove to federal court and to submit to state court jurisdiction must [have been] clear and unequivocal, and the defendant's actions must be inconsistent with the right to remove." Moore et al., *supra* § 107.18[3][a] (citing numerous cases).

*See also Acosta,* 207 F.Supp.2d at 1131 ("A waiver of the removal right must be clear and unequivocal.").

The instant action was not removable on September 8, 2004, when Bryant filed his counter-claims. As noted above, it was not "unequivocally apparent" that the case was removable any time before October 2004. *See supra* Part III.B. Thus, Bryant did not waive his right to remove.

**D. The Merits of the Removal**

Bryant asserts that removal was proper because this court has jurisdiction under both § 1331 (federal question) and § 1332 (diversity).

**1. Section 1331: Federal Question Jurisdiction**

Bryant and MGA contend that the court has federal question jurisdiction under § 1331 because Mattel's conversion claim is completely preempted by the Copyright Act.[11]

 Federal question jurisdiction is governed by the "well-pleaded complaint rule." This rule provides that jurisdiction under § 1331 is proper only when a federal question appears on the face of a well-pled complaint. *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As a result, a plaintiff—as master of the complaint— "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Further, a defendant cannot remove solely "on the basis of a federal defense, including the defense of preemption, even if the defense

The *Chavez* court, however, focused on the fact that the defendant had filed a motion to dismiss, not that the defendant had engaged in discovery. *Id.* at 1125.

11. MGA also argues in its Opposition that Mattel's breach of fiduciary duty, breach of loyalty, and unjust enrichment claims are completely preempted. MGA Opp. at 6–12. Because these arguments did not appear in

the Notice of Removal, the court need not consider them. 14C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 3732 (3d ed.1988) ("the district court may decline to assert jurisdiction over the case for reasons not averred in the removal notice"). Furthermore, consideration of the arguments would not change the court's conclusion that there was no basis for federal question jurisdiction at the time of removal.

is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. 2425. Thus, the federal question must appear on the face of the complaint, as alleged and controlled by the plaintiff. *Chesler/Perlmutter Prods., Inc.,* 177 F.Supp.2d at 1055.

■■■■■ "There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law. In such cases, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1107 (9th Cir.2000) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In these cases, even a well-pled state law complaint may be removed to federal court:[12]

■■■■■ In determining whether a particular state law claim is completely preempted by federal law for purposes of removal jurisdiction, the court may look to the factual allegations in the complaint and the information included in the notice of removal. *Chesler/Perlmutter Prods., Inc.,* 177 F.Supp.2d at 1058 ("[D]istrict courts may consider the petition of removal 'to clarify the action plaintiff presents and to determine if it encompasses an action with-

in federal jurisdiction.'") (quoting *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir.1983)). The court cannot consider post-removal evidence. *See id.* (court cannot consider evidence in motion to dismiss or opposition to motion to remand). This contrasts with diversity jurisdiction, where the court can "consider post-removal evidence in determining whether [the] requisite amount is in controversy." 16 Moore et al., *supra* § 107.14[2][g] n. 102.1.

■■■■■ The Copyright Act has complete preemptive force. *See Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225 (4th Cir.1993); *Chesler/Perlmutter Prods., Inc.,* 177 F.Supp.2d 1050; *Worth v. Universal Pictures, Inc.,* 5 F.Supp.2d 816 (C.D.Cal. 1997) (Baird, J.); *Dielsi v. Falk,* 916 F.Supp. 985 (C.D.Cal.1996) (Collins, J.). Furthermore, state law conversion claims are capable of being completely preempted by the Copyright Act. *See, e.g., Dielsi,* 916 F.Supp. at 992; *Worth,* 5 F.Supp.2d at 822–23. In order for there to be such preemption, the state law claim must meet two requirements. First, the "work at issue" must come within the subject matter of copyright. *Del Madera Props. v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 976 (9th Cir.1987); *Selby v. New Line Cinema Corp.,* 96 F.Supp.2d 1053, 1057 (C.D.Cal. 2000) (Matz, J.). Second, the rights granted under the state law must be "equivalent to [one] of the exclusive rights within the general scope of copyright." *Del Madera,*

---

**12.** Moreover, "under the artful pleading rule a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of the State of Montana,* 213 F.3d 1108, 1114 (9th Cir.2000) (quotation marks omitted). "Though 'artful pleading' and 'complete preemption' ostensibly remain separate doctrines, they are so intertwined in the available case law that they appear to raise [the] same question: are

Plaintiff's claims so 'completely preempted' that it is only by 'artful pleading' that [it] manages to avoid a 'federal question' in the Complaint[?]" *Braco v. MCI Worldcom Communications, Inc.,* 138 F.Supp.2d 1260, 1268 (C.D.Cal.2001) (Collins, J.). "In other words, it seems that 'complete preemption' is a prerequisite of sorts to any finding that a plaintiff has 'pled around' what would otherwise be a federal claim." *Id.*

820 F.2d at 976; *see also Selby,* 96 F.Supp.2d at 1057.

■ The court cannot find that Mattel's conversion claim was completely preempted at the time of removal because the Complaint and the Notice of Removal fail to reveal what work is even "at issue," much less whether that work falls within "the subject matter of copyright." First, the Complaint is vague and generalized; Mattel never mentions what items or works Bryant allegedly converted. As Bryant acknowledges, the Complaint's allegations are so generic that "Mattel could conceivably be trying to recover the value of anything from a pen or pad of paper to [a] truckload of collectible 'Barbie' dolls or more." Not. of Removal ¶ 18. Second, although the information in the Notice of Removal sheds some light on the nature of Mattel's claims, it does not necessarily demonstrate what works are "at issue." It was not until *after* removal—when Mattel admitted that the Bratz are relevant to its damages and asserted that this action involves the same issues as Bryant's declaratory relief action—that it became clear that Mattel's conversion claim is rooted in the allegation that Bryant "stole" the Bratz idea from Mattel. The court, however, may not consider this post-removal evidence for purposes of determining if there was complete preemption at removal. *See Chesler/Perlmutter Prods., Inc.,* 177 F.Supp.2d at 1058. Thus constrained by the evidence it may consider, the court cannot find that Mattel's conversion claim was preempted by the Copyright Act at the time of removal. Consequently, Bryant has failed to show that the court has federal question jurisdiction under § 1331.

### 2. *Section 1332: Diversity Jurisdiction*

Bryant and MGA argue that there is diversity jurisdiction under § 1332. This presents two issues: first, whether diversity jurisdiction was present at the time of removal; second, whether MGA's post-removal intervention as a non-diverse defendant destroyed the possibility of diversity jurisdiction.

#### a. *Diversity Jurisdiction at Removal*

To demonstrate the existence of diversity jurisdiction at the time of removal, Bryant must show that he and Mattel were of diverse citizenship and that it is more likely than not that "the matter in controversy exceed[ed] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1331; *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir.1997); *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403–4 (9th Cir. 1996). Mattel was and is a citizen of Delaware and California, and Bryant was and is a citizen of Missouri. Not. of Removal ¶¶ 12–13. Therefore, Mattel and Bryant were of diverse citizenship at the time of removal.

Further, Bryant has demonstrated that it is more likely than not that more than $75,000 was in controversy at the time of removal. Unlike federal question jurisdiction, the court may "consider post-removal evidence in determining whether [the] requisite amount is in controversy." 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.14[2][g] n. 102.1 (3d ed.2004) (citing *Singer v. State Farm Mut. Auto. Ins.,* 116 F.3d 373, 377 (9th Cir.1997) (court may consider plaintiff counsel's post-removal oral admission to court); *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319–20 (11th Cir.2001); *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335–36 (5th Cir.1995)). *See also Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 947–49 (11th Cir.2000) (court may consider, among other post-removal evidence, plaintiff's post-removal admissions); *Harmon v. OKI Sys.,* 115 F.3d 477 (7th Cir.1997). Cumulatively, the pre-removal and post-

removal evidence demonstrates that the rights to the Bratz were and are in controversy.

■ Specifically, Mattel's counsel has admitted that Bryant's royalties on the Bratz are relevant to Mattel's claim for damages; Mattel has acknowledged the similarity of the Toon Teens and the Bratz in its responses to discovery requests; Mattel has sought discovery regarding the "substantial similarity" between the Toon Teens and the Bratz; Mattel has agreed to provide a third party with documentation regarding the Toon Teens to demonstrate the Bratz are knock-offs of the Toon Teens; Mattel has admitted launching an investigation into the allegation the Bryant stole the idea for the Bratz from Mattel; Mattel has vigorously pursued discovery relating to the Bratz; and Mattel has admitted that its case involves that same issues as Bryant's declaratory relief action regarding the Bratz. Because the value of the rights to the Bratz easily exceeds $75,000, Bryant has demonstrated that it is more likely than not that the amount in controversy exceeded the jurisdictional minimum at the time of removal. *See* Jacoby Decl., Ex. 1 (Bryant Depo.) at 705 (testimony that Bryant has received approximately $10 million in royalties from the Bratz). Accordingly, Bryant has met his burden in demonstrating that diversity jurisdiction existed at the time of removal.

### b. *The Effect of MGA's Intervention*

Mattel argues that MGA's post-removal intervention as a non-diverse defendant destroyed diversity. In contrast, Bryant and MGA contend that MGA's intervention had no such effect, due to the long-standing rule that "[i]f a non-diverse party enters a case by intervention as of right, his presence will not destroy jurisdiction unless [he] was an indispensable party when the plaintiff filed the complaint." *Deutsche Fin. Serv. Corp. v. Schwartz*

*Homes, Inc.*, 187 F.R.D. 542, 545 (N.D.Ohio 1999) (citing *Dean v. Holiday Inns. Inc.*, 860 F.2d 670, 672 (6th Cir. 1988)). *See also Wichita R.R. & Light Co. v. Pub. Utils. Comm'n*, 260 U.S. 48, 54, 43 S.Ct. 51, 67 L.Ed. 124 (1922); *Am. Nat'l Bank & Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 582 (7th Cir.1984); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir.1970); *Hardy–Latham v. Wellons*, 415 F.2d 674, 676 (4th Cir.1968); *Black v. Texas Employers' Ins. Ass'n*, 326 F.2d 603 (10th Cir.1964); *Formulabs, Inc. v. Hartley Pen Co.*, 318 F.2d 485, 492 (9th Cir. 1963); *Mut. Fire, Marine & Inland Co. v. Adler*, 726 F.Supp. 478, 481–82 (S.D.N.Y. 1989). Mattel responds: (1) that MGA's intervention did not meet the requirements of this rule; and (2) that this rule is no longer good law in light of the passage of 28 U.S.C. § 1447(e) in 1988 and 28 U.S.C. § 1367(b) in 1990.

#### i. *Application of the Rule Regarding Non–Diverse Intervenors*

■ To intervene as "of right," one must meet the requirements of Rule 24(a)(2), which provides:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The court applies a four-part test under Rule 24(a)(2): (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action

may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Northwest Forest Res. Council v. Glickman,* 82 F.3d 825, 836 (9th Cir.1996). "In general, [courts] construe Rule 24(a) liberally in favor of potential intervenors." *Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir.2001). "In addition to mandating broad construction, [the court's] review is 'guided primarily by practical considerations,' not technical distinctions." *Id.*

▬ MGA's intervention met the requirements of Rule 24(a)(2). First, MGA's intervention was indisputably timely as the parties stipulated to allow MGA to intervene. *See Southwest Ctr. for Biological Diversity,* 268 F.3d at 818 ("As the parties agree that Applicants' motion to intervene was timely, we need not address this factor."). Second, MGA has a "significantly protectable" interest in Bryant's services relating to the Bratz and in the drawings of and rights to the Bratz. *See generally* Moore et al., *supra* § 19.06[1] (assignees

are usually "necessary parties" under Rule 19(a), which employs same analysis as Rule 24(a)(2)). Third, MGA is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect these interests. For example, MGA's interests could be impacted by an injunction precluding Bryant from continuing to assist MGA in developing the Bratz. Similarly, as MGA notes: "[I]f Bryant somehow were held to have copied Mattel's 'Toon Teens' work, MGA's acquisition of Bryant's original 'Bratz' drawings could be challenged." Bryant & MGA's Brief in Response to Court's Questions at 5. Finally, because MGA has broader rights to the Bratz than Bryant, Bryant may not adequately protect MGA's interests. *See generally* Moore et al., *supra* § 24.03[4][a][i] ("the applicant's burden on this matter should be viewed as minimal"). Thus, MGA intervened as "of right" under Rule 24(a)(2).

▬ Consequently, unless it was "indispensable" under Rule 19(b) at the time Mattel filed the Complaint, MGA did not destroy diversity by intervening.[13] In this

13. Rule 19 provides:
(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . . If the person has not been so joined, the court shall order that the person be made a party . . . .
(b) Determination by Court Whenever Joinder not Feasible. If a [party meeting the requirements of 19(a)] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The

factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
Fed.R.Civ.P. 19.
An absent party is "necessary" if he meets the requirements of Rule 19(a). He is "indispensable" if he meets the requirements of Rule 19(b) and the court determines, in equity and good conscience, that the case should be dismissed rather than proceed without him.
Although the factors in Rule 19(b) "overlap" with those in Rule 19(a), "[o]verlap . . .

context, the court examines whether the intervenor was "indispensable" at the time the original action was filed. *See Mut. Fire, Marine & Inland Ins. Co.,* 726 F.Supp. at 481 (an intervenor has to show an independent basis for jurisdiction only if it "was indispensable to the action at the time it was brought"). *See also Am. Nat'l Bank & Trust Co. of Chicago,* 750 F.2d at 582 (Posner, J.) ("[I]f the nondiverse party comes into the case by intervening in it, his presence will not deprive the court of jurisdiction unless the intervenor was an indispensable party when the complaint was filed. Federal jurisdiction is determined by the facts as they exist when the case is filed, and not by what happens later .... So the fact that a resident of the plaintiff's state intervenes will not require the plaintiff to abandon his suit unless the resident was an indispensable party at the time the suit was filed—in which event the plaintiff should have joined him at the outset, and if he had done so the court would have known that complete diversity was lacking."). Examining whether the intervenor was "indispensable" when the action was filed "prevent[s] collusion between parties to avoid jurisdictional requirements." *Mut. Fire, Marine & Inland Ins. Co.,* 726 F.Supp. at 481. "If the rule were otherwise, the requirement of complete diversity could be avoided by having one party bring an action while the indispensable party waits and then intervenes as of right under the court's ancillary jurisdiction." *Id.*

Here, MGA was not "indispensable" to the lawsuit as Mattel chose to characterize it in its Complaint. Mattel elected to sue Bryant in state court on what Mattel—as

master of its Complaint—asserted were purely state law claims. Conspicuously absent from the Complaint was any mention of MGA or the Bratz. Indeed, as late as July 2004, months after filing its Complaint against Bryant, Mattel claimed to be unable to determine "whether rights to Bratz are indeed at stake here." *See, e.g.,* July 12, 2004 Rep. at 4. Thus, it cannot be said that MGA was "necessary," much less "indispensable" to the action at the time Mattel filed its Complaint against Bryant.

Furthermore, there is no indication that the parties colluded to avoid the requirement of complete diversity. First, the parties have submitted over 126 pages in briefing, 118 exhibits, and two *ex parte* applications in connection with the instant motion to remand. Second, because this case was removed by Bryant from state court, there is a *"prima facie* absence of effort by the plaintiff to circumvent the complete diversity requirement." Joan Steinman, *Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork,* 35 Ariz. L.Rev. 305, 347 (1993).

Because MGA intervened as of right and was not "indispensable" at the time Mattel filed its Complaint against Bryant, its intervention did not destroy diversity jurisdiction under the rule as it existed prior to the enactment of § 1447(e) and § 1367(b).

ii. *The Effect of § 1447(e) and § 1367(b)*

[23] Mattel argues that § 1447(e) and § 1367(b) modified the application of the rule that the intervention of a non-diverse, non-indispensable party does not destroy diversity jurisdiction.

Section 1447(e) provides:

---

should not be equated with redundancy." Moore et al., *supra* § 19.05[1][a]. "While the necessary party analysis under Rule 19(a) and the indispensability analysis under Rule 19(b) look at similar issues, each has a different thrust which reflects its different purpose." *Id.* "Under the former, the court is more or

less concerned with whether nonjoinder *could* have one of the adverse effects addressed by that Rule." *Id.* (emphasis in original). "Under the indispensability analysis, the court ... must determine whether nonjoinder *actually will* result in ... prejudice ...." *Id.* (emphasis in original).

If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447(e). This section does not apply to the present case. While § 1447(e) discusses the court's options when a *plaintiff* attempts to *join* a non-diverse defendant, the present case involves the *intervention* of a non-diverse *defendant.* Therefore, § 1447(e) did not change the above-mentioned rule as it applies here.

Section 1367 provides in pertinent part:

(a) Except as provided in subsection[ ] (b) ..., in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemen-

tal jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367. Mattel argues that because the court's jurisdiction is premised upon § 1332 and MGA and Mattel are not diverse, the court is prohibited by § 1367(b) from exercising supplemental jurisdiction over MGA. This argument fails to recognize the distinction between "parties" and "claims." Section 1367(b) is concerned with the assertion of new "claims," not the intervention alone of new "parties." As succinctly stated by one of the preeminent scholars in the field:

[W]hether the context is removal or not, there can be persons who intervene on the side of the defendants ... against whom the plaintiff has no claim to assert. Indeed, the intervention of persons under Rule 24 typically will be at the instigation of the intervenors, and not at the urging of the plaintiff, and will be precipitated by the persons' concern that disposition of the action in their absence will as a practical matter impair or impede their ability to protect their interests .... In these situations where the plaintiff does not seek to assert a claim against the defendant intervenor, the plaintiff has not sought to circumvent the complete diversity requirement of § 1332, and § 1367(b) does not purport to limit the exercise of supplemental jurisdiction over the involvement or interests of such intervening parties. Its limitations apply only to the *claims,* if any, that the plaintiff would assert against such intervening defendants.

Joan Steinman, *Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork,* 35 Ariz. L.Rev. 305, 344–45 (1993) (emphasis in original).[14]

---

**14.** *See also Wichita R.R. & Light Co. v. Public Utilities Com'n of Kansas,* 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922) (allowing intervention of non-diverse defendant); *Home Ins. Co. v. Hughes,* CIV.A. No. 95–1833, 1996 WL

Here, MGA has intervened as a defendant and Mattel has not attempted to amend its Complaint to assert any claims against MGA.[15] Therefore, MGA's inter-

109292, *2 (E.D.La. Mar.11, 1996) (intervention of non-diverse defendant does not destroy diversity); *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ. 4337(JSM), 1996 WL 34154 (S.D.N.Y. Jan.30, 1996) (intervention of non-diverse "cross-claim defendant" does not destroy diversity); *MCI Telecomms. Corp. v. Logan Group, Inc.*, 848 F.Supp. 86, 89 & n. 2 (N.D.Tex.1994) (suggesting that intervening defendant does not trigger § 1367(b) concerns); Schwarzer et al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 7:179 (2004) ("An independent basis for subject matter jurisdiction may not be required where one intervenes as a defendant as a matter of right."); 36 Suzanne J. Bailey et al., *Corpus Juris Secundum* § 142 (2004) ("[J]urisdiction of an action between citizens of different states ordinarily is not lost by the intervention of new parties who are citizens of the same state as the original parties to whom their interests are opposed."); Marilyn J. Ireland, *Supplemental Jurisdiction Over Claims in Intervention*, 23 N.M. L.Rev. 57, 68–69 (1993) ("Jurisdiction once acquired on [the] ground [of diversity] is not ... defeated by the intervention ... of a party whose presence is not essential to a decision of the controversy between the original parties. Section 1367 does not change this conclusion .... [I]n the case of subject matter jurisdiction, it is jurisdiction over claims, not over parties, that is in issue .... [D]efensive intervenors have never been considered to violate the complete diversity rule in the past. It does not now necessarily follow that they will be held to be 'inconsistent with the requirements of section 1332.' ") (quotation marks and citations omitted); Abram Chayes, *The Role of the Judge in Public Law Litigation*, 89 Harv. L.Rev. 1281, 1290 (1976) (the right to participate in a case has ceased to depend on having a right to relief or liability to satisfy a claim). Mattel cites *Lumber Ins. Cos., Inc. v. Allen*, 892 F.Supp. 31 (D.N.H.1993), for the proposition that the mere intervention of a non-diverse defendant destroys diversity. Insofar as *Lumber Ins.* stands for this proposition, the court disagrees, as such a holding ignores the distinction between claims and parties.

15. Mattel cites *UNI Storebrand Ins. Co., UK Ltd. v. Star Terminal Corp.*, No. 96 CIV. 9556(DLC), 1997 WL 391125 (S.D.N.Y. July 11, 1997), for the proposition that an intervening defendant "steps into the shoes" of a full-party defendant and, therefore, "takes on" the plaintiff's original "claims" as if they were asserted against the intervening party. *UNI Storebrand* is distinguishable. There, the original defendant had completely failed to appear in the action and Societe Generale Energie Corp., S.A. ("SGE") sought to intervene as a defendant to protect its interests that were otherwise subject to default. In those specific circumstances, the court found that SGE, by intervening, "stepped into the shoes" of the original defendant and "took on" the claims asserted by the original plaintiff. *See id.* at *4 ("As a practical matter, the *only* live claim in this action is a non-diverse claim between [the plaintiff] and SGE."); *id.* at *6 ("The unique posture of this case stems from the fact that ... the nominal defendant[ ] is a dissolved corporation which does not intend to appear."). In contrast, Bryant, the original defendant, has appeared in this action and has litigated his rights vigorously.

Furthermore, even if the court assumed that MGA "took on" Mattel's claims against Bryant, the court would not be barred by § 1367(b) from retaining jurisdiction. After all, "[w]hen one turns to *removed* cases, ... supplemental jurisdiction should be liberally exercised—because of the *prima facie* absence of effort by the plaintiff to circumvent the complete diversity requirement." Steinman, *supra* at 347 (emphasis added). Because this is a removed case, the court may liberally exercise supplemental jurisdiction over the "claims" MGA might have "taken on" by intervening after removal. This "[does] *not* expand federal jurisdiction beyond the bounds that the [Supreme] Court [has] recognized." *Id.* at 347–48; *see Phelps v. Oaks*, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888 (1886). Additionally, by exercising supplemental jurisdiction over these claims, the court can "simultaneously adjudicate the original civil action, safeguard the defendant's removal, and allow all of plaintiff's related claims to be heard in one suit." Steinman, *supra* at 348. "All this serves fairness and efficiency, without sacrificing enforcement of the jurisdictional requirements of § 1332 ...." *Id.*

Finally, to the extent Mattel argues its "claims" are asserted against MGA, it lends credence to the inference that its claims are actually related to the rights to the Bratz and are likely preempted by the Copyright Act, thereby raising a federal question.

vention did not implicate § 1367(b). In short, because neither § 1447(e) nor § 1367(b) precludes the court from exercising diversity jurisdiction over an action involving the post-removal intervention of a non-diverse, non-indispensable defendant, the court finds that MGA's intervention did not destroy diversity.[16]

## IV. CERTIFICATION UNDER 28 U.S.C. § 1292(b)

■ "In circumstances where a district judge upholds subject matter jurisdiction and denies a motion to remand, but has doubts about these rulings, the judge may sometimes secure interlocutory review by certifying the rulings under 28 U.S.C. § 1292(b)." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 132 (2d Cir.2003) (Newman, J., concurring) (citing *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003)). 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

No court of appeals has addressed whether § 1447(e) or § 1367(b) causes the post-removal, Rule 24(a)(2) intervention of a non-diverse, non-indispensable defendant to destroy diversity jurisdiction. This court's finding that neither section does so is a controlling question of law critical to the court's exercise of jurisdiction and as to which there is no precedent. Resolution of the issue will both materially advance the litigation and avoid the needless expenditure of judicial resources if the Court of Appeals concludes this court lacks jurisdiction. *See, e.g., Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir.2004) (raising issue of jurisdiction *sua sponte* after case had proceeded to summary judgment in district court). Accordingly, the court

---

**16.** The cases cited by Mattel fail to address the situation before the court. *See Stevens v. Brink's Home Sec., Inc.*, 378 F.3d 944, 949 (9th Cir.2004) (plaintiff's amending complaint to join non-diverse defendants); *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 634 (7th Cir.2003) (intervening plaintiff); *Doleac v. Michalson*, 264 F.3d 470, 473–77 (5th Cir. 2001) (plaintiff's amending complaint to add claims against non-diverse defendant); *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir.1999) (same); *Casas Office Mach., Inc. v. Mita Copystar Am. Inc.*, 42 F.3d 668, 672–78 (1st Cir.1995) (same); *Yniques v. Cabral*, 985 F.2d 1031 (9th Cir.1993) (plaintiff's amending complaint to join non-diverse defendant; holding based on 1447(e), which applies only to efforts by plaintiffs to join non-diverse defendants); *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir.1985) (paraphrasing *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1374 (9th Cir.1980), involving plaintiff's amending complaint to add claims against non-diverse defendant); *Carolina Asphalt Paving, Inc. v. Balfour Beatty Constr., Inc.*, No. 9:04–1578–28, 2004 WL 3015177, at *3 (D.S.C. Nov.19, 2004) (plaintiff's addition of claims against third-party defendant); *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 595–96 (C.D.Cal.1998) (plaintiff's joining non-diverse defendant); *Farm Bureau Mut. Ins. Co., Inc. v. Eighmy*, 849 F.Supp. 40 (D.Kan.1994) (pre-removal intervention of non-diverse defendant).

certifies the issue for interlocutory appeal under § 1292(b). No later than 10 days from the date of this order, Mattel shall file its application to appeal this court's order or notify this court, in writing, that no such application will be made.

## V. CONCLUSION

Finding the presence of diversity jurisdiction under § 1332, the court **DENIES** Mattel's Motion to Remand.[17]

IT IS SO ORDERED.

---

17. Mattel's request for attorneys' fees is denied.